UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM TIMOTHY PERRIN, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PAPA JOHN'S INTERNATIONAL, INC., )<br>*et al.*, )<br>)<br>Defendants. ) | Case No. 09-01335-AGF |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS'
AMENDED MOTION TO COMPEL, COUNTER-MOTION FOR A PROTECTIVE
ORDER, AND MEMORANDUM IN SUPPORT**

At the Rule 16 conference early in this case, Papa John's told the Court it wanted to conduct class-wide discovery. The Court did not approve. Again in a recent Order, the Court stated that "discovery is limited" against absent class members "in FLSA cases." (Doc. 159, p.8). Nevertheless, despite telling Plaintiffs it would seek to work out an agreement on discovery, and without renewing its request to the Court to seek class-wide discovery, Papa John's unilaterally served over 3,100 "questionnaires" containing 43 interrogatories and 5 requests for production of documents to every class member who has opted in to this case.

*After* serving these questionnaires, Papa John's then asked Plaintiffs' counsel to agree to individually respond to all of them. When Plaintiffs refused, Papa John's preemptively filed an unripe and procedurally improper motion to compel without even waiting for Plaintiffs to serve its objections or seek a protective order. Papa John's went about this all wrong and the Court's direction is now needed.

## **OPPOSITION TO PAPA JOHN'S MOTION TO COMPEL**

Papa John's motion to compel is wrong on nearly every front. First, it should have petitioned the Court and sought to meet its burden to show exceptional circumstances to justify discovery of absent class members *before* serving 3,125 questionnaires, particularly after the Court already rejected class-wide discovery at the Rule 16 conference. Second, to whatever extent Papa John's assumes that its proposed "questionnaire" to absent class members was validly served, its motion is not even ripe because it was filed before the deadline for Plaintiffs to respond to the discovery would have run. And third, if Papa John's truly believed it was entitled to serve these questionnaires as it did, the burden would be on Plaintiffs' to seek a protective order, which Plaintiffs are seeking in an abundance of caution so that Papa John's does not claim objections to its overbroad and burdensome discovery are waived. Papa John's motion exacerbates the mistakes it made in this process.

**I. Papa John's motion to compel is improper**

The plain language of the rules of civil procedure precludes a party from moving to compel until the time period for seeking a protective order or filing objections and responses has passed. *Williams v. Burkemper*, 2007 WL 689746, at *1 (E.D. Mo. Mar. 2) ("The Court advises plaintiff that any future motion to compel would be premature until plaintiff has served a proper discovery request on the defendants as allowed by the Federal Rules of Civil Procedure, and they fail to respond within the time allowed by the Rules."); *Boone v. Wal-Mart Stores, Inc.,* 2008 WL 2967103, at *1 (E.D. Mo. July 31, 2008) (same).

On November 1, 2011, the first "discovery questionnaire" was received. Plaintiffs had 30 days to answer or file a motion for a protective order. Fed. R. Civ. P. 33(b)(2) & 1970 adv. note, (responding party has the right to file a protective order in lieu of answering or objecting). As

shown in the attached e-mail from defense counsel (Ex. A), the parties agreed that the 30 days did not run from November 7-18 (11 days), "while there were discussions between us to resolve the individualized discovery issue." Ex. A. Excluding the 11 days, the 30 day period did not run until, at the earliest, Monday, December 12, 2011 – three days *after* Papa John's' motion to compel. Papa John's motion should thus be denied as moot.

Nevertheless, the issue of course needs to be resolved. Because Papa John's statement that individualized class-wide discovery is "generally required" in FLSA collective actions is not just misleading but downright dishonest, it should not have assumed it would be permitted to proceed as it did, particularly after raising the issue at the Rule 16 conference. Instead of preemptively preparing, printing, and shipping over 15 boxes of "questionnaires" to over 3,100 and counting class members, this issue should have been addressed with the Court first. To avoid repetition, and to ensure that the Court can address in a single instance Plaintiffs' opposition to both Papa John's attempt to conduct discovery on over 3,100 people and growing, plus Plaintiffs' specific objections to this particular "questionnaire" to the extent it is permitted to even a sample of the class here, Plaintiffs incorporate their accompanying motion for protective order in opposition to Papa John's motion to compel.

## **PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Papa John's seeks to exploit the opt-in nature of the class to effectively eliminate the efficiency goals of the collective nature of the case by serving over 3,100 "questionnaires," containing at least 43 questions each and numerous requests for documents. As its motion acknowledges, one of the purposes of this tactic is to move to dismiss all class members who fail to respond, which is frankly the only basis on which to oppose the usual practice of representative discovery.

3

Plaintiffs do not oppose discovery beyond the named plaintiff, but Papa John's arguments about why this particular discovery is necessary lack merit—and if Papa John's cannot show that a representative sample is not similarly situated, discovery of every last class member is bound to be a waste of time and money. Plaintiffs therefore urge the Court to reject Papa John's discovery proposal, address the specific objections raised by Plaintiffs herein, and authorize a scaled-back questionnaire to be serve on a representative sample of the class.

## PROCEDURAL HISTORY

Plaintiffs are a conditionally certified class of 3,138 and counting current and former pizza delivery drivers for Papa John's, who opted in under 29 U.S.C. § 216(b). Plaintiffs allege that Papa John's failed to adequately reimburse them for supplying, fueling, and maintaining their vehicle and that the amount of that under-reimbursement constitutes a de facto deduction from their wages. Because Papa John's paid a cash wage that was at or very near the applicable minimum wage, Plaintiffs claim these de facto deductions reduce their paid wage below the statutory minimum.

Previously, at the Rule 16 conference held September 23, 2010, the Court rejected Defendants' request that it be permitted to perform individualized discovery. Since the notice period opened, and without first obtaining Court-permission to conduct class-wide discovery, Papa John's has served so-called "questionnaires" on each class member, asking extensive questions and seeking documents. (*See* Papa John's Motion to Compel, Doc. 191-1). Papa John's has demanded a completed questionnaire from every class member. The questionnaire consists of 43 questions, counting discrete subparts, and thus seeks more than a hundred thousand answers class-wide. Papa John's seeks an extensive amount of detailed information that Papa John's, as each class member's employer, already possesses. It also seeks documents from each class member that Papa John's should posses pursuant to its duty to maintain employment

4

records. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2.  Finally, the questionnaire goes beyond what Papa John's should need to support its inevitable motion for decertification. It seeks detailed information that the vast majority of delivery drivers could not answer and irrelevant and invasive personal information with no purpose other than to deter participation.

## ARGUMENT

### I. Representative discovery is more than adequate here.

#### A. A collective action contemplates representative discovery.

"In large or complex litigation, the Court may limit the scope of discovery to protect a party from unduly burdensome discovery requests." *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006). In a large FLSA collective action, "discovery should be limited to a representative sample of the entire group."  *Nelson, v. Am. Std. Inc.,* 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4). Indeed, the Court rejected Papa John's request that the class notice inform potential class members that they might have to participate in discovery because **"discovery is limited" against absent class members "in FLSA cases."** (Doc. 159, p.8 (emphasis added).) Permitting discovery against every class member would "defeat[] the purpose of permitting a collective/class action by denying the efficiencies such a procedure is intended to produce." *AT&T v. Dernovish,* 720 F. Supp. 2d 1085, 1087 (W.D. Mo. June 8); *see also Cranney v. Carriage Servs., Inc.*, 2008 WL 2457912, at *3 (D. Nev. June 16) (individual discovery is a "wasteful [use] of the parties and the court's resources" and "would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome."); *McGrath v. City of Philadelphia*, 1994 WL 45162, at *2-3 (E.D. Penn. Feb. 10) (individualized discovery in collective action "inappropriate"); *Nelson,* 2009 WL 4730166, at *3 (same); *Adkins v. Mid-America Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. Aug. 13, 1992) (after collective action certification, "individual depositions and interrogatories are not appropriate").

5

In those unusual cases where individual discovery has been permitted, the class size was relatively small, such that individual discovery could sensibly be achieved without overburdening the parties. For instance, the cases relied upon by Papa John's involved less than 1,000 class members – typically, far less. *Daniel v. Quail Int'l, Inc.,* 2010 WL 55941, at *1 (M.D. Ga. Jan. 5, 2010) (39 class members); *Kaas v. Pratt & Whitney,* No. 89-8343, 1991 WL 158943, at *5 (S.D. Fla. Mar. 18, 1991) (100 class members); *Renfro v. Spartan Computer Servs., Inc.,* 2008 WL 821950 at *3 (D. Kan. Mar. 26) (136 class members); *Krueger v. New York Telephone Co.,* 163 F.R.D. 446 (S.D.N.Y 1995) (162 class members); *Coldiron v. Pizza Hut, Inc.,* 2004 WL 2601180, at *3 (C.D. Cal. Oct. 25, 2004) (306 class members); *Gandhi v. Dell Computer,* Case No. A-08-CA-248, Doc. 241, p.3 (W.D. Tex. July 28, 2010) (935 class members).[1] In contrast, this case already involves over 3,100 drivers and is growing every day.

Though ignored by Papa John's, even the cases on which it relies recognized that the size of the class is critical in determining the scope of discovery. In *Daniel v. Quail Int'l, Inc.,* cited by Papa John's, the distinction between individualized discovery in small collective actions and representative discovery in larger collective actions was the key:

> Plaintiffs correctly assert that representative discovery, or "sampling," is a permissible procedure for determining damages in a collective action if the class is very large. *See, e.g., Long v. Trans World Airlines, Inc.*, 761 F.Supp. 1320, 1323 (N.D. Ill. 1991) (permitting sampling in class action brought by more than 3000 employees); *see also Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 358 (S.D. Ohio 2006) (approving representative discovery in case involving more than 1500 opt-in plaintiffs). However, in an FLSA collective action ***where the plaintiff class is small*** and the discovery is related to the question of whether the individual plaintiffs are similarly situated within the meaning of the FLSA, individualized discovery is often permitted.

---

[1] Papa John's also cites *Williams v. Sprint/United Mgmt. Co.,* 2006 WL 1867471 (D. Kan. June 30, 2006) to suggest that the Court permitted over 300 depositions. However, the Court recognized that "plaintiffs have never asked this court to review any rulings concerning the total number of opt-in plaintiffs defendant may appropriately depose." *Id.* at *1 n1.

6

2010 WL 55941, at *1 (M.D. Ga. Jan. 5) (emphasis added). And in fact, the case relied on by Papa John's to claim that "court have allowed defendants to conduct individualized discovery in FLSA collective actions" entailed relatively small classes. *Id.* (39 class members); *but see Morales v. Farmland Foods, Inc.*, 2010 WL 3447513, *2 (D. Neb. Aug. 27) (rejecting discovery to 281 collective action plaintiffs because "the extensive nature of the discovery sought outweighs the benefit"); *Wilson v. Guardian Angel Nursing, Inc.*, 2009 WL 790107 (M.D. Tenn. Mar. 24) (rejecting discovery to 266 post-notice opt-ins).[2]

Papa John's argues that Congress intended individual discovery by requiring a class member to "opt-in" and become a "party plaintiff." 29 U.S.C. § 216(b). That argument has been rejected by courts in this Circuit. *Dernovish*, 720 F. Supp. 2d at 1087. Instead, the legislative history confirms that a collective action is still a representative action, such that the scope of discovery should be limited. Congress was *not* attempting to limit the ability of one employee to "sue for ... other employees." 93 Cong. Rec. 2182. Instead the opt-in requirement was simply seen as a means of preventing "an outsider," such as a labor union representative, from suing on behalf of all employees. *Id.* Nothing in the amendment prevented "a suit brought by one collectively for himself and others," demonstrating that a collective action is a representative action brought by one employee for others. *Id.*

Papa John's points to the phrase "party plaintiff" in section 216(b) to argue that opt-in class members are no different than the named plaintiff. But, "[t]he label 'party' does not indicate an

---

[2] Papa John's heavy reliance on *Gandhi v. Dell* is misplaced. In *Dell,* the Court distinguished cases that required representative discovery by noting that Dell only sought to serve requests for admissions and a single interrogatory. Papa John's 43 interrogatories and several requests for production could not be more different. Moreover, as the court recognized, that case did not involve a "uniform policy in violation of the FLSA," enhancing the individual characteristic of the claim. *Dell, supra,* p.9. In contrast, here, Plaintiffs allege the FLSA is violated by Papa John's uniform reimbursement policy.

7

absolute characteristic." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). Rather, "[w]hat is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement." *Id.*; *see also* Restatement (Second) of Judgments § 34 (likewise defining "party" as a person who is "named" *or* who is otherwise "bound by" the judgment). Use of the phrase "party plaintiff" merely indicates Congress's intent that all class members are bound by a judgment. But, just as discovery is limited against Rule 23 class members, it is also so limited in a collective action. *Dernovish,* 720 F. Supp. 2d at 1087.

Discovery should be limited to a representative sample of the opt-in class members. Plaintiffs' propose a sample size of five percent, which is consistent with the sample size accepted by other courts. *Nelson*, 2009 WL 4730166 at \*3 (91 out of 1,328 class members); *Schiff v. Racetrac Petroleum, Inc.,* 2:03-cv-402, Dkt. No. 111 (E.D. Tex. June 8, 2005) (35 out of 1,000 class members).

Papa John's also argues that it is entitled to individualized discovery from every class member because the three class members they deposed were unable to state their exact automobile expenses. But the fact that its delivery drivers cannot specifically calculate their automobile expenses and compute the amount of their minimum wage violation does not logically or legally entitle Papa John's to confirm that fact for every class member. *See, e.g., Fast v. Applebee's Int'l, Inc.,* 2008 WL 5432288, at \*2 (W.D. Mo. Dec. 31) (improper to ask questions that no normal person can answer in a wage and hour collective action). Further, this Court has already held that Plaintiffs' claims do not depend on pizza delivery drivers' knowledge of their actual vehicle expenses. (Doc. 148, p.11). Specifically, this Court held, "Although they may not have determined their effective rates of pay, Plaintiffs and the putative class members could nonetheless reliably state that their out-of-pocket automobile expenses were not covered

by the reimbursements." (*Id.*).³ As Papa John's knows, this case will be proven by expert testimony of a reasonable approximation of vehicle-related expenses, just as Papa John's purported to do in designing its reimbursement program.⁴

## II. The questions Papa John's ask should also be limited.

Discovery against opt-in class members, where it is permitted at all, is circumscribed. Given the remedial nature of the FLSA and the expense and burden of class-wide discovery, courts bring a higher level of scrutiny to discovery propounded on opt-in class members. *Fast,* 2008 WL 5432288, at *2; *Dernovish*, 720 F. Supp. 2d at 1087. Such scrutiny is warranted to ensure that defendants do not use discovery against opt-in class members as "a tool to limit or discourage participation in the opt-in class and to advance to the efficiency and cost containment objectives of FLSA actions." *Fast,* 2008 WL 5432288, at *2. In *Fast,* Judge Laughrey articulated four elements that class discovery must satisfy:

1. The discovery is not being sought for the purpose of depriving the opt-in plaintiff of his or her class status;

2. the discovery is simple enough that it does not require the assistance of counsel to answer;

---

³ In any event, all three deponents testified to an actual and mathematical basis for their allegations in that all three deponents testified that they knew Papa John's reimbursement barely covered the cost of the gas used on the job, but they still had to pay for all other vehicle operating expenses. Perrin Dep. 202:14-203:16, 264:23-265:12, attached as Ex. B; Johnson Dep. 82:6-83:7, 94:6-10, 94:23-95:6, 98:20-99:2, attached as Ex. C; Bowden Dep. 107:8-15, 110:1-9, 110:17-111:5, 111:22-112:3, 131:25-132:4 & 132:9-22, attached as Ex. D.

⁴ Papa John's also argues that the Supreme Court has held that defendants have a due process right to individualized discovery, citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ---, 131 S. Ct. 2541, 2560-61 (2011). *Dukes* merely held that the so-called "trial by formula" proposed by Plaintiffs in that case was incompatible with the Rules Enabling Act (*not* due process), where the defendant had the right to raise statutory defenses to discriminatory hiring decisions, even if the Plaintiffs could show discriminatory impact. This is not a discrimination case, it is not a Fed. R. Civ. P. 23(b)(1) case, and Plaintiffs are not attempting to prevent Papa John's from raising statutory defenses. Plaintiffs are only seeking to eliminate cumulative and duplicative discovery. Moreover, the statutory claim at issue here, 29 U.S.C. § 216(b), permits representative proof, thus, there is no violation of the Rules Enabling Act.

    3. the discovery meets the standards of Federal Rule of Civil Procedure 26; and

    4. the information is not otherwise available to the defendant.

*Id*. Papa John's does not even attempt to justify its questionnaire under the *Fast* principles. And indeed the questionnaire does not satisfy any of these elements.

### A. Papa John's would deprive class members of their status.

When Papa John's began serving the questionnaires, Plaintiffs offered to send the questionnaire to each class member, serve all responses returned, and guarantee Papa John's an agreed minimum response rate. Papa John's flatly rejected Plaintiffs' proposal, stating that it required a response from no less than all class members.

The fact that Papa John's demands a response from every class member shows that its discovery will be followed by a motion in which Papa John's demands that non-responding class members be dismissed. Its motive to discourage participation is further evidenced by the overbroad and sensitive nature of some of the requests, asking class members to produce tax returns, credit card statements, check registers, cancelled checks, and disclose social security numbers, dates of birth, cell phone numbers, and bankruptcy filings. Because the questionnaire is a pretext to deprive some drivers of their class status, it fails the first element of the *Fast* test.

### B. The detailed questions require the assistance of counsel.

Experience has already proven that class members will need substantial assistance of counsel to complete the proposed questionnaire. To provide the detailed responses to a similar questionnaire for pre-certification opt-in plaintiffs here, Plaintiffs' counsel had to talk with each recipient of the questionnaire by phone, give detailed instruction, and provide individualized assistance to complete the questionnaire. Decl. of Richard M. Paul III, ¶ 2, attached as Ex. E. Such assistance was necessary because plaintiffs did not understand the meaning of the detailed

10

questions, the effort needed to fully and accurately respond, or the duty to respond based on facts, not guesswork. Also, the scope and complexity of the questionnaires discouraged them from attempting fully-considered and accurate responses. To expend this effort for over 3,000 plaintiffs would be incredibly burdensome. For some class members, the fees that would be incurred in working through this questionnaire would exceed the damages that we are claiming on their behalf.

Further, much of the difficulty caused by the questionnaire results from Papa John's unsupported presumption that drivers will possess the detailed answers it seeks. Papa John's citation to the deposition testimony only demonstrates that class members are generally not able to give the exact figures Papa John's seeks. For instance, among other problems, few ordinary people will possess the level of recall or knowledge necessary to tell Papa John's the value or odometer reading of their vehicle on various dates, their average miles per gallon, or specific information about every repair or service call. This was a central concern in *Fast* because the questions appeared designed to seek detailed information about daily job tasks that no normal person could recall. *Fast,* 2008 WL 5432288, at *2 (denying motion to compel). Requesting an unreasonable level of detail only encourages broad speculation and guesswork, requiring greater assistance from counsel to ensure that class members provide fact-based responses and state they are estimating when they estimate.

**C. The questionnaire does not meet the standard of Rule 26.**

Fed. R. Civ. P. 26 requires that discovery be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In addition, a court "must limit the frequency and extent of discovery . . . if it determines that," the discovery sought may be obtained in a less burdensome or expensive manner, if it is unreasonably cumulative or duplicative, or if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2). Also, both Rule 33 and

11

this Court have imposed a 25 interrogatory limit, with Papa John's did not seek leave to exceed. See Doc. 75, p. 2, § 3(D). Counting discrete subparts as required by the rule, Papa John's 43 questions per class member exceed this limit.

### 1. Papa John's seeks cumulative and duplicative information.

On its face, Papa John's insistence that all drivers respond with vehicle, driving, and insurance information is unreasonably cumulative. *See* Ex. B, p. 3-5. Papa John's insists it needs information from each class member to support a motion for decertification because it wants to show that the different vehicles, driving habits, and insurance costs create individual issues. But, if they exist, individualized issues will present themselves in any representative sample of this class. And Papa John's can use a representative sample of individual issues, if they exist, to support their motion for decertification. It is not necessary to extract detailed information from every class member, unless the real motive is attempt to reduce the class size.

### 2. Papa John's seeks irrelevant information.

A great number of Papa John's questions are also entirely irrelevant to the claims or defenses in this case. In question 1, Papa John's seeks social security number, address, cell phone number, and e-mail address. Invasive personal information, such as this, is not relevant to whether class members were paid below the federal minimum wage; it has nothing to do with the costs of supplying a vehicle to deliver pizzas. *See Uto v. Job Site Services Inc.,* 269 F.R.D. 209, 211 (E.D.N.Y. 2010) (request for social security numbers irrelevant in FLSA case).

In question 2, Papa John seeks documents showing the amount of tips received by each driver. But the amount of tips is irrelevant. "Tips are gifts from a customer" and are not considered wages paid by an employer. *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *19 (S.D.N.Y. Feb. 1).

In questions 3-5, Papa John's seeks to know vehicle id number, as well as the name of who paid for the vehicle, insurance, and any repairs or maintenance. The answers to these questions are irrelevant. Drivers all supplied a vehicle for Papa John's to use for its business. Absent receipt of this benefit, Papa John's would have to pay for, insure, repair and maintain a fleet of vehicles. Even if a driver received assistance, from a parent or someone else, in paying for their vehicle-related expenses, that fact and who provided the assistance is irrelevant. Papa John's has no right to appropriate a gift to the employee for its own business because the gift itself has value to the driver. Likewise, it would take special instruction for many class members to find vehicle id number and the information serves no purpose in this case.

In question 3, Papa John's also asks class members to state the average number of miles driven per week. Papa John's will argue it needs this number so that it can apportion personal use to business use. But the degree of personal use is irrelevant. *Brennan v. Modern Chevrolet Co.,* 363 F. Supp. 327, 333 (N.D. Tex. 1973) *aff'd,* 491 F.2d 1271 (5th Cir. 1974) (even where "90% of the mileage" is driven "for [the employee's] personal use," because "the very nature of [the employees] duties ... require his possession and use of an automobile" the entire vehicle and related costs are for the benefit of the employer); *accord Marshall v. Sam Dell's Dodge Corp.,* 451 F. Supp. 294, 304 (N.D.N.Y. 1978). Even Papa John's own expert, who created its reimbursement program, concedes the number of personal miles is irrelevant because the reimbursement program is set up on a cents-per-mile basis, "which takes and creates its own personal use/business use allocation." Czarapata Depo. 42:20-43:13, attached as Ex. F. "In other words, the driver is reimbursed for every business mile they report, so that creates a business use allocation in itself." *Id.*

In question 3, Papa John's also seeks copies of each class members' state and federal tax return for the last seven years, along with all W-2s, 1099s and other tax related forms. This request is facially irrelevant, invasive, harassing, and overbroad. A tax return has extensive personal information, none of which has any bearing on the claims or defenses. "Courts are typically reluctant to compel their disclosure" precisely because of "the private nature of the sensitive information contained therein." *Uto,* 269 F.R.D. at 212 (collecting cases). Papa John's cannot show that tax information has any relevance to a minimum wage violation.

Papa John's also seeks "copies of documents showing information about each automobile identified" in response to question 3.  This request is facially overbroad, vague and ambiguous. On its face, the request appears to ask drivers to copy any document "showing information" about their automobile, which would absurdly include documents like an owner's manual. If did not intend to seek irrelevant and overbroad information, Papa John's would not seek each drivers' "title, license, [and] registration," as such documents have no bearing on vehicle-relate costs.  Likewise, as discussed above, a mileage log reflecting personal use would not contain relevant information.

In question 4, Papa John's seeks information about the insurance coverage obtained by each class member. Some of the information is not likely to lead to admissible evidence, such as the insurer name, policy number, name of the person who paid for the policy premium, and date and description of claims made against the policy. The only arguably relevant information is the amount it cost to insure the vehicle. Papa John's document request for "copies of documents showing information about each insurance policy" suffers from the same vagueness and overbreadth as the document requests discussed above.

In question 5, Papa John's seeks very detailed information about the service and repairs made to each vehicle. The request seeks a level of detail that is facially irrelevant and overbroad, because it bears no relation to the costs incurred for such repairs, such as the name and address of the mechanic and the name of the person who paid for the repair. Papa John's also seeks copies of all "receipts, credit card statements, check registers, cancelled checks, and other documents showing amounts paid" for such repairs. A request for credit card statements and check registers is facially overbroad as it requires drivers to disclose a significant amount of personal financial information unrelated to their vehicle. The request is also cumulative, as Papa John's seeks the same information in question 5.

Finally, in question 6, Papa John's goes on a fishing expedition to uncover information about possible bankruptcy filings made by drivers. Presumably, Papa John's is fishing for someone who filed bankruptcy, but has not disclosed their class member status in the bankruptcy in a design to hold them judicially estopped from recovering here. But Papa John's did not plead judicial estoppel by bankruptcy misconduct as an affirmative defense – probably because Papa John's lacks any factual basis to do so. So, bankruptcy filings are irrelevant to any currently pled claim or defense, and the discovery should be denied.

**D. Much of the information is already available to Papa John's.**

Further revealing that its motive is to discourage participation, Papa John's seeks information from drivers that it already has. For instance, in question 1, Papa John's seeks each class members' date of birth and social security number. In question 2, Papa John's seeks the store address where the employee worked, along with her employment dates and name of her supervisor. But Papa John's certainly has this information in its employment records. In fact, at Papa John's request the consent forms were coded with information identifying employee number and store number so that Papa John's will have such information without further inquiry.

15

Likewise, Papa John's seeks documents showing "hours worked, compensation, delivery reimbursement, and tips from customers," even though it keeps these records for payroll purposes. Indeed, the FLSA requires Papa John's to keep such records. *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.2. And Papa John's has produced such records in this litigation, proving that both class-wide discovery and discovery of such information from pizza drivers themselves are unnecessary. Paul Decl. ¶ 3.

In question 3, Papa John's seeks the year/make/model of the vehicle used by the employee to make deliveries. But Papa John's already has a list of vehicles driven by the class members – in fact, it produced a list in this case. Paul Decl. ¶ 4.  Likewise, in question 4, Papa John's seeks information about each class members' automobile insurance policy, but Papa John's personnel file for each driver includes this information. *Id.*

In question 3, Papa John's also asks class members to state the average number of miles driven making deliveries each week. But Papa John's maintains records of delivery addresses that would allow it to calculate this information less burdensomely and more precisely by using computer software to identify the difference between store address and delivery address. Paul Decl. ¶ 3. Also, after this lawsuit was filed, presumably to comply with its record keeping requirements, Papa John's began requiring drivers to report miles driven each shift. Bowden Depo. 135-140, attached as Ex. D. It is highly unlikely that any class member will be able to provide a better estimate than is available from Papa John's own records. *See, e.g., Fast*, 2008 WL 5432288, at *2 (disallowing discovery designed to seek detailed information about specific daily occurrences which no normal person can accurately recall and which was available in defendants' employment records).

In question 6, Papa John's seeks to know information about bankruptcies filed by class members. Not only is this information irrelevant, but such information is publicly available and Papa John's can easily search for it.

Finally, Papa John's verification page contains superfluous language beyond what is required by rule or statute. *Compare* Papa John's Mot. to Compel, Doc. 191-1, p.7 *with* Rule 33 (only requiring that the "person who makes the answers must sign them" under oath) & 28 U.S.C. § 1746 (setting forth simple statement for declaring that answers are true and correct).

### III. Conclusion and plaintiffs' proposed questionnaire.

Papa John's is entitled to reasonable discovery. Discovery to all class members is not reasonable. This questionnaire is not reasonable. Plaintiffs propose that 5% of opt-in class members, selected at random, respond to a questionnaire in the form provided in Exhibit G, which is similar to Papa John's questionnaire, but addresses many of Plaintiffs' objections.

**December 12, 2011**                               **Respectfully submitted,**

/s Richard M. Paul III
STUEVE SIEGEL HANSON LLP
George A. Hanson (MO #43450)
Richard M. Paul III (MO #44233)
Jack D. McInnes (MO #56904)
Barrett J. Vahle (MO #56674)
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:     (816) 714-7100
Facsimile: (816) 714-7101

and

WEINHAUS & POTASHNICK
Mark A. Potashnick (E.D. MO Bar # 41315)
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:(314) 997-9150
Facsimile: (314) 997-9170

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that the foregoing was filed with the Court via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records and as a result served on all counsel of record.

                /s Richard M. Paul III
                Attorney for Plaintiffs


**CERTIFICATE OF COMPLIANCE WITH L.R. 37-3.04**

 Plaintiffs attempted to comply with local rule 37-3.04. Even before serving any objections to Papa John's questionnaire, Plaintiffs reached out to defense counsel to attempt to reach common ground on the scope of discovery. I spoke with Rodney Harrison by telephone about limiting the number of class members required to respond to Papa John's questionnaire. Mr. Harrison stated he would confer with his client. Later, he e-mailed me stating that Papa John's would not agree to any limitations and would insist on a response from every class member. Having reached an impasse, Plaintiffs told Papa John's that it was going to file a motion for protective order. Before Plaintiffs' objections were even due, Papa John's filed its motion to compel.

                /s Richard M. Paul III
                Attorney for Plaintiffs