UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM TIMOTHY PERRIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:09-CV-01335-AGF |
| | ) | |
| PAPA JOHN'S INTERNATIONAL, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 328) of Defendants Papa John's International, Inc., and Papa John's USA, Inc., (jointly "Papa John's" or "Defendants") to compel and show cause. Defendants request the Court to enter an order compelling each opt-in plaintiff in this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., to complete a discovery questionnaire, and ordering each opt-in plaintiff who fails to complete the questionnaire to show cause why their claims should not be dismissed. The Court held oral argument on September 16, 2014. For the reasons stated in oral argument and set forth below, the Court shall substantially **DENY** Defendants' motion.

## BACKGROUND

Plaintiff William Timothy Perrin filed this action on August 19, 2009, on behalf of himself and other similarly situated delivery drivers employed by Papa John's. Perrin claims that Defendants violated the FLSA and the minimum wage laws of five states

(Missouri, Arizona, Florida, Illinois, and Maryland) that mandate a higher minimum wage than that under federal law, by failing to reasonably approximate the delivery drivers' automotive expenses for reimbursement purposes, and consequently, effectively failing to pay the minimum wage.

On September 14, 2011, this Court granted Plaintiff's motion for conditional certification under the FLSA, thus providing Papa John's drivers the opportunity to "opt-in" to the FLSA collective action. (Doc. No. 148.) Of 29,000 putative plaintiffs, 3,840 have filed consents to join the collective action ("opt-in plaintiffs").

Papa John's distributed a questionnaire to every driver who opted in to the FLSA collective action, and on December 9, 2011, Papa John's moved to compel the opt-in plaintiffs to respond to the questionnaire. The Court held oral argument on this first motion to compel on February 17, 2012. (Doc. No. 261.) During oral argument, the Court noted that, given the nature and context of the case, a staged approach to discovery would be appropriate. (*Id.* at 54.) The Court suggested it would permit the questionnaire to be sent to all class members, and the Court asked the parties to meet and confer regarding the structure of a survey sample group that would cover 10% of the class. (*Id.* at 54-56.) The Court suggested that once a sample was obtained, the parties may be in a position to argue why further information from the remainder of the opt-in plaintiffs is necessary or unnecessary. (*Id.* at 56.) The parties thereafter reached an agreement on the contents of the questionnaire as well as the process for its distribution and collection.

In a February 27, 2012 Joint Report Regarding Discovery Questionnaire, the parties agreed that the questionnaire would be "sent to all members of the conditionally certified

class, with a minimum response rate of 10% for each Papa John's market." (Doc. No. 238.) The six-page questionnaire asked for information about the vehicles the opt-in plaintiffs used to deliver pizza for Papa John's, including the make and model of the vehicle, dates the vehicle was used, average miles driven, and service and repair expenses incurred. On May 8, 2012, Defendants filed a second motion to compel the opt-in plaintiffs to supplement their allegedly incomplete questionnaire responses. (Doc. No. 258.)

On December 31, 2013, before ruling on Defendants' second motion to compel, the Court granted Plaintiffs' motion to certify their state law claims as class actions under Federal Rule of Civil Procedure 23. (Doc. No. 299.) Plaintiffs argued and the Court agreed that the state law claims met the requirements of Rule 23(b)(3) because "common evidence predominates over individualized proof in establishing the central question with respect to liability." (*Id.* at 13.) The Court found that "Defendants' assertion that individualized showings of each Plaintiff's vehicle expenses will be required to prove Plaintiffs' claims [was] without merit" because "Defendants' own reimbursement methodology does not depend upon the drivers' actual expenses and the regulatory framework does not require that reimbursement be based on actual expenses." (*Id.* at 15.)

The Court then denied Defendants' second motion to compel without prejudice on March 31, 2014, due to the Court's concern that the motion was mooted by the Rule 23 certification. (Doc. No. 312.)

On April 4, 2014, the parties filed a joint motion to amend the case management order. While the parties agreed on many points, they disagreed as to whether a new questionnaire should be distributed to the opt-in plaintiffs. (Doc. No. 314.) On May 14,

2014, this Court issued an Amended Case Management Order ("Amended CMO"), and, as part of the amended schedule, ordered that "Defendant may obtain further discovery with respect to all opt-in plaintiffs by way of a mailed questionnaire, the content of which has been disclosed to Plaintiffs." (Doc. No. 320 at 2.)

On May 23, 2014, Plaintiffs' counsel mailed a new questionnaire to the opt-in plaintiffs. This second questionnaire is one page, and it again asks for vehicle make and model information, dates the vehicle was used, average miles driven, and service and repair expenses incurred. Some but not all of the opt-in plaintiffs have responded to the questionnaire. Although the parties dispute the exact number of responses obtained, they agree that, as of the date of oral argument, Defendants had received at least 803 responses, representing over 20% of the opt-in plaintiffs.

On August 1, 2014, the Defendants filed the instant motion to compel and show cause, requesting that "this Court enter an order compelling each and every opt-in Plaintiff to complete the discovery questionnaire" and to order each opt-in plaintiff who fails to complete the questionnaire "to show cause why their claims should not be dismissed." (Doc. No. 328.)

Defendants make two arguments in support of their current motion. First, Defendants contend that this Court's Amended CMO already compelled every opt-in plaintiff to respond to the questionnaire, and that the opt-in plaintiffs who fail to respond to the questionnaire must therefore show cause as to why they should not be dismissed, pursuant to Federal Rule of Civil Procedure 37(b)(2), for violating the Court's order. Second, Defendants contend that this Court should issue a new order compelling every opt-

in plaintiff to complete the discovery questionnaire because the Defendants need the questionnaire responses to prepare a decertification motion and to prepare for trial.

**DISCUSSION**

**I.      The Amended CMO and Dismissal Under Rule 37(b)(2)**

The Court will first address Defendants' argument regarding whether an opt-in plaintiff's failure to respond to the questionnaire is a violation of the Court's Amended CMO, such that the Court may dismiss that opt-in plaintiff under Rule 37(b)(2). As Defendants correctly note, dismissal under Rule 37(b) is only appropriate if "there is (1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party." *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000). Defendants cite *Arnold v. DirecTV, Inc.*, No. 4:10-cv-00352-JAR, 2014 WL 3611842 (E.D. Mo. July 14, 2014) in support of their argument that every opt-in plaintiff who fails to respond to the questionnaire should be dismissed in this case.

In *Arnold,* the Court had previously "ordered that Plaintiffs ***shall respond*** to the parties' discovery questionnaire no later than January 17, 2014, and serve their responses on Defendants no later than February 14, 2014." *Arnold*, No. 4:10-cv-00352-JAR, Doc. No. 191 at 1 (E.D. Mo. Jan. 13, 2014) (emphasis added). By contrast, the Amended CMO here provides only that the Defendants "may obtain further discovery with respect to all opt-in plaintiffs by way of a mailed questionnaire." (Doc. No. 320 at 2.) Because this Court has not yet compelled the opt-in plaintiffs to respond to the questionnaire, it would not be appropriate at this stage to dismiss any of the opt-in plaintiffs for failing to do so.

## II. New Order Compelling Discovery From Every Opt-In Plaintiff

Having found that the Court has not yet ordered every opt-in plaintiff to respond to the questionnaire, the Court must decide whether to do so now. The Court is mindful that a collective action under § 216(b) of the FLSA differs from a class action under Rule 23 of the Federal Rules of Civil Procedure in that putative FLSA class members must opt in to become a party to a § 216(b) action. *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 814-15 (W.D. Mo. 2005). Because of this difference, disputes regarding the proper scope of individualized discovery from opt-in FLSA plaintiffs are common. In resolving such disputes, federal district courts have alternatively ordered individualized discovery from all opt-in plaintiffs or only a representative sample of opt-in plaintiffs, depending on the size of the putative plaintiff pool and the nature of the discovery request. *See Craig v. Rite Aid Corp.*, 4:08-CV-2317, 2011 WL 9686065, at *3-4 (M.D. Pa. Feb. 7, 2011) (collecting cases).

The parties have not cited, and the Court has not found, any Eighth Circuit precedent that defines the proper scope of discovery in an FLSA collective action. However, a few principles emerge from the decisions of district courts that have considered the issue. One such principle is that in FLSA collective actions, opt-in plaintiffs will not normally be subjected to the same full range of discovery as actual "parties" to a case because allowing the full range of discovery would "defeat[] the purpose of permitting a collective/class action by denying the efficiencies such a procedure is intended to produce." *Dernovish v. AT & T Operations, Inc.*, 720 F. Supp. 2d 1085, 1088 (W.D. Mo. 2010).

Rather, the scope of discovery in an FLSA collective action "is subject to the trial

court's discretion and depends on the nature of the case and the purported need for the information." *Dernovish*, 720 F. Supp. 2d at 1088. When evaluating requests for limited discovery from FLSA opt-in plaintiffs, district courts in this Circuit have cautioned that the discovery should meet the following minimum requirements: "1) The discovery is not being sought for the purpose of depriving the opt-in plaintiff of his or her class status; 2) the discovery is simple enough that it does not require the assistance of counsel to answer; 3) the discovery meets the standards of Federal Rule of Civil Procedure 26; and 4) the information is not otherwise available to the defendant." *Fast v. Applebee's Int'l, Inc.*, 06-4146-CV-C-NKL, 2008 WL 5432288, at *2 (W.D. Mo. Dec. 31, 2008); *see also White v. 14051 Manchester, Inc.*, 4:12-CV-469JAR, 2013 WL 1867113, at *1 (E.D. Mo. May 2, 2013).

The size of the putative plaintiff class may also be a factor in determining whether discovery from a representative sample is sufficient or whether every opt-in plaintiff must participate in discovery. *See White*, 2013 WL 1867113, at *2. Discovery from every opt-in plaintiff may be more appropriate where the plaintiff pool is smaller and a statistically significant sample would be difficult to obtain. *See Craig*, 2011 WL 9686065, at *3-4 (citing cases in which discovery of all opt-in plaintiffs was permitted in classes of less than 1,000 plaintiffs).

Considering the above principles in the context of this case, the Court finds that at this stage, a questionnaire response from every opt-in plaintiff would be unduly burdensome, unnecessary, and likely to undermine efficiency interests. Unlike many of the cases cited by Defendants, this case involves nearly 4,000 opt-in plaintiffs. And although

the one-page questionnaire is relatively simple, Defendants have not demonstrated why a response from every opt-in plaintiff is necessary at this stage in the case, where the next primary issue before the Court will be whether to finally certify or decertify the FLSA claim as a collective action.  In their motion, Defendants put forth two purposes for the discovery questionnaire:  (1) to establish that no two opt-in plaintiffs are similarly situated regarding vehicle expenses, and (2) to demonstrate that no opt-in plaintiff can show that his vehicle expenses caused him to be paid less than the minimum wage.  At oral argument, Defendants also put forth an additional purpose for the questionnaire:  (3) to identify potential witnesses.  But Defendants have not shown why any of these purposes would not be served, at least at this stage, by a representative sample of responses to the questionnaire.

Regarding Defendants' first purpose, if Defendants' contention is that no two opt-in plaintiffs are similarly situated, certainly Defendants could demonstrate this by showing that no two of the 803 opt-in plaintiffs who have responded to the questionnaire are similarly situated.

Regarding Defendants' second purpose, this Court has already held, in granting Plaintiffs' motion for class certification of their state law claims under Rule 23, that it is unnecessary to rely on "individualized showings of each Plaintiff's vehicle expenses" to prove Plaintiffs' minimum wage claims because "Defendants' own reimbursement methodology does not depend upon the drivers' actual expenses and the regulatory framework does not require that reimbursement be based on actual expenses."  (Doc. No. 299 at 15.)  For this reason, the parties have proceeded to obtain experts whose reports will presumably demonstrate whether the reimbursement formula used by Defendants is or is not

a reasonable approximation of Plaintiffs' vehicle expenses. Defendants have not asserted that their expert needs discovery responses from every opt-in plaintiff to make this showing. To the extent that, after discussing the responses received thus far with their expert,[1] Defendants assert that their expert needs additional questionnaire responses from more, but not all, of the opt-in plaintiffs to demonstrate the reasonability of Defendants' reimbursement formula—for example, because the current responses do not constitute a statistically significant sample, or do not adequately represent different geographical markets—Defendants should confer in good faith with Plaintiffs to obtain such responses, and if necessary, ask the Court for this more tailored relief.

Finally, regarding Defendants' third purpose, their need to identify potential witnesses, the Court finds that Defendants may identify such individuals from the responses received thus far and from Defendants' own records. To the extent Defendants wish to depose a certain number of opt-in plaintiffs who have not responded to the questionnaire–to perhaps ascertain whether their situations differ materially from those who have responded–Defendants again should confer in good faith with Plaintiffs to agree upon the number of depositions, and if necessary, ask the Court for this relief.

As explained to the parties at oral argument, it is possible that the parties' discovery needs may evolve as the case evolves. At this stage, however, discovery from every opt-in plaintiff is unnecessary and the Court will instead require the parties to confer regarding whether the responses obtained thus far are sufficient for expert analysis or whether a

---

[1] At oral argument, Defendants stated that they have not yet discussed with their expert whether the responses received thus far constitute a statistically significant sample or are adequately representative of the opt-in plaintiffs across different markets.

reasonable amount of additional discovery is necessary to obtain an adequately representative sample.

## CONCLUSION

For the reasons discussed above and at oral argument,

**IT IS HEREBY ORDERED** that Defendants' motion to compel and show cause is **DENIED**. (Doc. No. 328.)

**IT IS FURTHER ORDERED** that on or before **October 7, 2014**, Defendants shall identify whether additional discovery from some, but not all, of the opt-in plaintiffs is necessary to obtain an adequately representative sample for expert analysis at this stage of the case, and Defendants shall confer in good faith with Plaintiffs to attempt to reach an agreement with respect to such discovery.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2014.