UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM TIMOTHY PERRIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:09-CV-01335-AGF |
| | ) | |
| PAPA JOHN'S INTERNATIONAL, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff William Timothy Perrin filed this action on August 19, 2009, on behalf of

himself and other similarly situated delivery drivers employed by Defendants.  Plaintiffs

claim that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206,

and the minimum wage laws of five states (Missouri, Arizona, Florida, Illinois, and

Maryland) that mandate a higher minimum wage than that under federal law, by failing

reasonably to approximate the delivery drivers' automotive expenses for reimbursement

purposes, and consequently, effectively failing to pay the minimum wage.  The Court has

conditionally certified an FLSA collective action and has also certified Federal Rule of Civil

Procedure 23(b)(3) class actions with respect to Plaintiffs' state law claims.[1]

The parties have filed several motions for partial summary judgment.  Plaintiffs

move for summary judgment regarding Defendants' alleged failure to use reasonable

---

[1]     Defendants have moved to decertify these actions, but the Court has stayed further
proceedings, including the decertification motions, other than ruling on the summary
judgment motions, pending a ruling by the U.S. Supreme Court in *Tyson Foods, Inc. v.
Bouaphakeo*, No. 14-1146 (cert. granted June 8, 2015).

vehicle expense reimbursement rates.  (Doc. No. 364.)  Plaintiffs also move for summary judgment on several of Defendants' affirmative defenses.  (Doc. No. 360.)  The parties have filed cross motions for summary judgment regarding Defendants' application of a tip credit. (Doc. Nos. 367 & 371.)  And Defendants move for summary judgment regarding the exclusion of fixed costs from any calculation of minimum wage liability.  (Doc. No. 368.) Finally, Plaintiffs move to strike the declaration of Bradford K. Matthiesen, submitted in support of Defendants' summary judgment briefs.  (Doc. No. 388.)

For the reasons set forth below, the Court will **GRANT** Plaintiffs' motion for summary judgment regarding Defendants' application of a tip credit; **GRANT in part** and **DENY in part** Plaintiffs' motion for summary judgment on Defendants' affirmative defenses; and **DENY** Plaintiffs' motion for summary judgment regarding Defendants' reimbursement rates and Defendants' motions for summary judgment regarding the tip credit and the exclusion of fixed costs.  The Court will also **DENY as moot** Plaintiffs' motion to strike Matthiesen's declaration.

## <u>BACKGROUND</u>

Unless otherwise indicated, the facts set forth below are undisputed.  Plaintiffs in this case are current or former pizza delivery drivers employed as hourly, non-exempt, employees by Defendants, who are certified members of five Rule 23 class actions asserting minimum wage claims under state laws of Missouri, Maryland, Florida, Illinois, and Arizona, and a collective of 3,840 opt-in Plaintiffs under 29 U.S.C § 216(b), asserting claims under the FLSA.

Defendants require delivery drivers, as a condition of their employment, to maintain safe, legally operable, insured vehicles for making deliveries. During the relevant time period, Defendants compensated delivery drivers using three types of payments: hourly wages, delivery-related vehicle expense payments, and, in some locations, "box bonuses."

Defendants reimbursed drivers a flat rate for vehicle expenses to compensate them for costs associated with the use of their personal vehicles to make deliveries. Under Defendants' vehicle expense reimbursement policy, all drivers were paid a flat rate per delivery, regardless of the actual number of miles driven or actual expenses incurred. Defendants' per-delivery reimbursement rate for delivery-related vehicle expenses was at all relevant times less than the standard business mileage rate established by the IRS.[2] However, for non-delivery-related vehicle expenses, including corporate employee travel for purposes other than customer deliveries, Defendants at least at one point reimbursed employees at the IRS standard business mileage rate.[3]

Defendants' reimbursement rate for vehicle expenses included amounts for both "fixed costs" and "operating costs." "Fixed costs" included items such as automotive

---

[2]    Defendants do not specifically deny Plaintiffs' assertion in their statement of facts that Defendants' per-delivery reimbursement rate was at all relevant times less than the IRS standard business mileage rate. *See* Doc. No. 383 at 3 (stating only that this fact is "immaterial" because Defendants are not required to reimburse at the IRS rate and that factors other than Defendants per-delivery rate may need to be considered in determining Defendants' total reimbursement). Therefore, this fact is undisputed for purposes of this motion. *See* Local Rule 4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

[3]    Defendants admit that they used the IRS standard business mileage rate to establish their reimbursement rate for non-delivery-related employee travel expenses beginning in 2008, but deny that this reimbursement rate corresponded with the IRS rate at all times after 2008.

insurance, registration, state taxes, and depreciation.  Defendants' formula approximated

these amounts and reimbursed drivers for a portion of them, in recognition of drivers' non-

employment-related uses of their vehicles, which account for some of these costs.

Defendants also reimbursed drivers a sum for "operating costs," such as fuel costs and

vehicle maintenance.  Defendants similarly based this reimbursement on a formula which

approximated drivers' costs rather than on the actual expenses of its drivers.  Defendants did

not track or maintain records of delivery drivers' actual expenses, and also did not require

delivery drivers to track their actual expenses.

Prior to 2008, Defendants paid delivery drivers a single hourly wage, which was the

minimum hourly wage under the FLSA or state law (if higher than the FLSA).   However, in

2008, Defendants implemented a "split wage" system, which took advantage of "tip credits"

allowed under the FLSA and state law.  Under the split wage system, drivers received two

hourly wages:  an "in store" rate, equal to or greater than minimum wage under the FLSA or

state law (if higher than the FLSA), and an "on the road" rate, equal to an hourly cash wage

of $4.25, plus tips.  The parties dispute whether the "on the road" rate, including tips, was at

or above minimum wage.

Plaintiffs' minimum wage claims are based on the Department of Labor ("DOL")

regulations applicable to the FLSA, which state that "the wage requirements of [the FLSA]

will not be met where the employee 'kicks-back' directly or indirectly to the employer . . .

the whole or part of the wage delivered to the employee."  29 C.F.R. § 531.35.  A kickback

occurs when the cost to the employee of tools specifically required for the performance of

the employee's work "cuts into the minimum or overtime wages required to be paid him

under [the FLSA]." *Id.* As this Court has previously held, although the regulations allow an employer to reasonably approximate the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of minimum wage compliance, if the employer's approximation is unreasonable, the employee may have a claim that his wage rate was reduced below the minimum as a result of the under-reimbursement. *See* Doc. No. 299 at 14-15 (citing 29 C.F.R. § 778.217 and related cases). Thus, Plaintiffs claim that Defendants' reimbursement of their vehicle expenses was an unreasonable approximation and that their wages were reduced below the minimum as a result of the under-reimbursement.

## ARGUMENTS OF THE PARTIES

### Defendants' Reimbursement Formula

Plaintiffs move for partial summary judgment ordering that Defendants have failed to reasonably approximate vehicle expenses for purposes of minimum wage compliance. Plaintiffs argue that, under the FLSA,[4] Defendants must either reimburse Plaintiffs' actual vehicle expenses or a reasonable approximation of these expenses. Although the FLSA and accompanying regulations do not specify what constitutes a reasonable approximation, Plaintiffs argue that the DOL Wage and Hour Division's Field Operations Handbook ("DOL Handbook") mandates that if employers do not track and reimburse actual vehicle expenses, they must reimburse employees at the IRS standard business mileage rate. Plaintiffs

---

[4] The parties' summary judgment motions reference only the FLSA and corresponding DOL regulations. The parties argue that because the DOL's interpretations of the FLSA apply to the state law minimum wage statutes, their summary judgment motions apply equally to Plaintiffs' state law claims. However, the parties do not cite or refer to any of the state statutes or regulations in their motions. Therefore, the Court will focus on the FLSA in resolving the parties' motions.

contend that requiring employers to use the IRS standard business mileage rate, in lieu of tracking actual expenses, makes sense because the IRS standard business mileage rate is the most widely recognized estimate of business vehicle expenses and was used by Defendants themselves for all business travel purposes except customer deliveries.

In response, Defendants argue that they are not required to reimburse vehicle expenses at all. Instead, Defendants argue that they are only required to pay weekly wages equal to or above minimum wage, and they may reimburse actual vehicle expenses or a reasonable approximation of these expenses merely to prevent these expenses from cutting into minimum wage. Defendants assert that although the DOL Handbook provides a safe harbor for employers who use the IRS standard business mileage reimbursement rate, it does not mandate the use of that rate or state that the failure to use that rate automatically constitutes a minimum wage violation. Defendants argue that such a mandate would be inconsistent with the FLSA and the DOL's own regulations. Defendants also note that Plaintiffs' own expert, Paul Lauria, calculated a purportedly reasonable reimbursement rate for purposes of this litigation that was lower than the IRS standard business mileage rate. Finally, Defendants note that the IRS itself recognizes and allows alternative reimbursement rates, including fixed and variable rate allowances, which Defendants argue are reflected in their own reimbursement methodology.

**Defendants' Affirmative Defenses**

Plaintiffs next move for summary judgment on Defendants' affirmative defenses numbered 2, 5, 16, 19, 20, 22-24,[5] and 25-33.

Defendants' 2nd affirmative defense states that the complaint is "barred in whole, or in part, by all applicable statutes of limitation." (Doc. No. 137 at 36.) Plaintiffs argue generally that Defendants have failed to identify which class or class members' claims they believe to be outside of a statute of limitations. Plaintiffs assert that Defendants have only—indirectly, through the rebuttal report of their expert, Dr. Christopher Pflaum— provided evidence and argument for a single statute of limitations issue: that Plaintiffs included damages in the Arizona class that occurred prior to May 28, 2007. Plaintiffs contend, however, that under Arizona law, a class member who commences his claim within three years of the last violation is entitled to recover for "all violations that occurred as part of a continuing course of employer conduct regardless of their date." (Doc. No. 360 at 4, citing Ariz. Rev. Stat. Ann. § 23-364.) Plaintiffs argue that Defendants have thus misapplied this statute of limitations and that it does not bar Plaintiffs' claims. Additionally, Plaintiffs argue that including these damages does not violate the class notice, which does not purport to limit the period for, or amount of, damages and simply defines the class by the time of their employment.

---

[5] The Court notes that Plaintiffs' motion does not initially request summary judgment on Defendants' affirmative defenses numbered 22-24, but later in the argument section discusses why summary judgment is proper as to each. *See* Doc. No. 360 at 1, 6-7; *see also* Doc. No. 386 at 2 n.2. As Plaintiffs combined their motion for summary judgment and memorandum in support as a single filing, the Court infers that Plaintiffs intended to request summary judgment on these defenses as well, and will therefore consider them under Plaintiffs' present motion.

Plaintiffs also move for summary judgment on Defendants' 5th affirmative defense, that the complaint is barred by § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because Defendants relied in good faith on, and acted in accordance with, the DOL's written interpretations of the FLSA. Plaintiffs contend that Defendants fail to specify what "written interpretation of the FLSA" they relied upon, and that this alone justifies summary judgment. Further, to the extent that Defendants suggest that their attempts to reasonably approximate vehicle expenses constitutes conformance with written guidance, Plaintiffs argue that this is insufficient. Plaintiffs argue that if they prove that Defendants' approximations were not in fact reasonable, Defendants' alleged attempt to comply will not insulate them from liability.

Plaintiffs next move for summary judgment on Defendants' 19th affirmative defense, which states that the Court lacks subject matter and supplemental jurisdiction over some or all of Plaintiffs' claims, including Plaintiffs' "attempt to assert putative class and collective actions, which are inherently incompatible, and therefore cannot be maintained in the same action." (Doc. No. 137 at 38.) Plaintiffs argue that the Court has already denied Defendants' motion to dismiss on the basis of this defense, and as Defendants have not provided any additional evidence in support of their argument, Plaintiffs are entitled to summary judgment consistent with the Court's earlier judgment.

Plaintiffs also move for summary judgment on Defendants' 22nd affirmative defense, which states that Plaintiffs who were not employed by Defendants lack standing to assert claims against Defendants. Plaintiffs argue that Defendants have failed to identify any class members who were not employed by one or both of Defendants, and they have not provided

any other supporting documentation or factual basis for this defense. Thus, Plaintiffs contend that summary judgment is proper as to this defense.

Plaintiffs move for summary judgment on Defendants' 23rd affirmative defense, which states that the named Plaintiffs lack standing to serve as class representatives for any class members who did not live or work for Defendants in the same state as they did. Plaintiffs argue that summary judgment is warranted on this defense, as Defendants have failed to identify any such Plaintiff or class representative.

Plaintiffs further move for summary judgment on Defendants' 24th affirmative defense, which simply states that one or both Defendants are not proper parties for claims asserted by Plaintiffs. Plaintiffs argue, in a single sentence, that Defendants have failed to come forward with any evidence supporting this defense, so summary judgment in favor of Plaintiffs is appropriate.

Plaintiffs group Defendants' 16th, 20th, 25th, 27th, 29th, 32nd, and 33rd affirmative defenses, and move for summary judgment as to all of them. Defendants' 16th affirmative defense states that Plaintiffs' state law claims are preempted by federal law. The 20th affirmative defense states that Plaintiffs have not adequately pleaded that the Court has diversity jurisdiction under 28 U.S.C. § 1332(d)(2). The 25th affirmative defense states that Plaintiffs are not entitled to compensation for "actual expenditures purportedly made on behalf of Defendants" that were incurred without Defendants' knowledge. The 27th affirmative defense states that if Plaintiffs are entitled to damages, Defendants are entitled to a credit for, or a set-off against, amounts they overpaid such Plaintiffs. The 29th affirmative defense states that Plaintiffs are precluded from recovering from Defendants because

Defendants paid everything legally due under the FLSA and state laws. The 32nd affirmative defense states that Plaintiffs have not complied with statutory conditions precedent and administrative requirements, as necessary, prior to filing this action. The 33rd affirmative defense states that Defendants reserve their right to assert additional defenses. With respect to these defenses, Plaintiffs generally argue that Defendants have produced no evidence relating to, or supporting, these defenses, and that there are therefore no genuine issues of material fact and summary judgment is proper.

Plaintiffs also group Defendants' "equitable" 26th, 28th, 30th, and 31st affirmative defenses, and move for summary judgment as to all of them. The 26th affirmative defense states that Plaintiffs are estopped from pursuing, or have waived, the claims in the complaint, due to their acts and omissions, including their failure to record and report their actual expenditures. The 28th affirmative defense states that Plaintiffs have failed to mitigate their damages. The 30th and 31st defenses allege that Plaintiffs' claims are barred by the doctrines of laches and unclean hands, respectively. Plaintiffs argue that these defenses are inconsistent with minimum wage laws, and are therefore not cognizable. In support of their argument, Plaintiffs cite to a number of cases which state that estoppel, waiver, and failure to mitigate are not defenses to minimum wage claims under the FLSA.

Finally, Plaintiffs argue that Defendants' responses to discovery requests are insufficient to prohibit summary judgment. Plaintiffs claim that Defendants have referred them to "nearly 110,000 documents" without identifying which allegedly support any particular affirmative defense. (Doc. No. 360 at 10.) Plaintiffs contend that Defendants' lack of specificity violates Federal Rule of Civil Procedure 33(d), makes it impossible to

determine which, if any, of the produced documents support Defendants' arguments, and that Defendants cannot be allowed to make vague references to the documents they have produced throughout litigation as an evidentiary basis to deny summary judgment on their affirmative defenses.

In response, Defendants first argue that Plaintiffs' motion for summary judgment is premature and inappropriate at this stage of the litigation. Defendants cite to the Court's most recent Case Management Order (Doc. Nos. 350, 353 & 354) to argue that, though the parties completed discovery for dispositive motions by the time Plaintiffs filed their summary judgment motion, trial discovery was continuing.[6] Defendants thus claim that summary judgment is premature. Additionally, Defendants argue that several of their affirmative defenses will only apply to the determination of damages, if any, and that summary judgment on them is premature until the "complex factual and legal determinations . . . on liability and decertification issues" are concluded. (Doc. No. 386 at 4.) As examples,[7] Defendants discuss their 5th affirmative defense (reliance on DOL guidance) and 27th affirmative defense (that Defendants are entitled to a set-off for amounts overpaid to Plaintiffs) as requiring a finding of liability before discussions of summary judgment become appropriate.

---

[6]     Under the Case Management Order, trial discovery ended on June 1, 2015. (Doc. No. 350.)

[7]     Defendants claim that this argument applies "particularly, for [Defendants'] 5th, 25th, 26th, 27th, 28th, 29th, 31st and 33rd defenses, as these defenses necessarily contemplate factual and legal determinations yet to be decided." (Doc. No. 386 at 7.)

Defendants next argue that Plaintiffs cannot show that there is an absence of evidence regarding Defendants' defenses. Defendants contend that Plaintiffs have failed to satisfy their initial burden of production by submitting evidence which negates an element of Defendants' defense, and have similarly failed to prove elements of their complaint necessary for judgment on those defenses which "express a negation of an element of" Plaintiffs' claims. (Doc. No. 386 at 9.) Specifically, Defendants argue that Plaintiffs have failed to show that they are "similarly-situated," which Defendants claim is necessary before Plaintiffs can obtain summary judgment on Defendants' 25th through 29th, and 31st, affirmative defenses. Likewise, Defendants claim that Plaintiffs have failed to show that they are entitled to damages, which is necessary for summary judgment on Defendants' 27th affirmative defense. Defendants also contend that Plaintiffs have not proven that they are entitled to recovery for their FLSA or state-law claims, by proving the elements of these claims, which they must do to obtain summary judgment on Defendants' 25th, 29th, and 32nd affirmative defenses.

Defendants go on to argue that their non-waiver equitable defenses may apply to FLSA claims, even if waiver may generally not apply to FLSA claims. In support, Defendants cite cases for the proposition that estoppel may apply in some FLSA cases. Defendants also argue generally that equitable defenses apply to Plaintiffs' state law claims. Defendants distinguish Plaintiffs' cases as discussing estoppel based on bargaining and contract law, which Defendants claim is not the case here. Therefore, Defendants argue that summary judgment is not warranted on their equitable defenses.

In reply, Plaintiffs argue that Defendants' procedural attempts to avoid summary judgment are spurious, and that the timing of their motion for summary judgment on Defendants' affirmative defenses is not only appropriate, but required under the deadlines set forth in the most recent Case Management Order. Plaintiffs argue that, to the extent that Defendants required additional discovery to oppose summary judgment, they should have requested an extension under Federal Rule of Civil Procedure 56(d), and that Defendants have not followed the proper procedure to do so, nor have they shown specifically what additional facts discovery would uncover. Plaintiffs also contend that because Defendants have the burden of proof on their affirmative defenses, Plaintiffs need only show the absence of evidence supporting the affirmative defenses for summary judgment to be proper. Plaintiffs claim that they have adequately done so. [8]

Plaintiffs also refute Defendants' attempts to distinguish Plaintiffs' authority regarding equitable defenses to FLSA claims. According to Plaintiffs, Defendants concede

---

[8]  The Court notes that Plaintiffs appended a paragraph to the end of their reply which asks the Court to strike several of Defendants' affirmative defenses which Plaintiffs contend are not proper affirmative defenses. (Doc. No. 400 at 15.) While the Court agrees, as discussed further below, that certain of the defenses in question are improperly styled, the Court declines to consider a motion to strike which has been raised for the first time in Plaintiffs' reply. Because Defendants have not had the opportunity to respond to a motion to strike, and because the parties have already briefed their arguments under the standard for summary judgment, out of fairness to the parties, the Court will consider Plaintiffs' motion regarding Defendants' affirmative defenses only as one for summary judgment. *See Bullock v. Brandywine Sch. Dist.*, 837 F. Supp. 2d 353, 364 n.5 (D. Del. 2011) (recognizing that courts differ on whether summary judgment or a motion to strike is the proper procedure to challenge an affirmative defense, but deciding to consider that motion as one for summary judgment because the parties had briefed it as such); *cf. Int'l Outdoor, Inc. v. City of Southgate*, No. 2:11–CV–14719, 2012 WL 2367160, at *3 (E.D. Mich. Apr. 26, 2012) (declining to strike affirmative defenses solely because they were not properly styled as affirmative defenses).

that waiver is not a valid minimum wage defense, but argue that this rule is inapplicable where a plaintiff fails to allege his minimum wage claims at any time prior to filing suit. Plaintiffs contend that for such an "estoppel by silence" argument to be viable, Defendants must have demonstrated that Plaintiffs had a duty to speak out about their claims prior to this case. (Doc. No. 400 at 12.) Plaintiffs assert that they were under no such obligation, and that, therefore, even if Defendants' equitable defenses are cognizable defenses to an FLSA claim, they would still be invalid. Further, Plaintiffs argue that Defendants have produced no evidence that they relied upon any failure of their employees to report minimum wage violations, or shown that they would have changed their practices had they received such reports. Thus, Plaintiffs argue that summary judgment is proper with respect to Defendants' equitable affirmative defenses.

## Application of Tip Credit

Both sides move for summary judgment regarding Defendants' use of a "tip credit" to calculate Plaintiffs' wages for purposes of determining minimum wage compliance. The parties do not dispute that at least some group of Plaintiffs are "tipped employees" as that term is defined in the FLSA,[9] and that the FLSA allows an employer to pay tipped employees an hourly cash wage below minimum wage, as long as the employees' tips make up the difference between the cash wage and minimum wage, and as long as the employer properly takes credit for those tips. Presently, the FLSA provides that the minimum cash

---

[9] Defendants have identified 18 Plaintiffs, including named Plaintiff Perrin, whom they assert earn at least $30 per month in tips, qualifying them as "tipped employees" under the FLSA, and Plaintiffs do not dispute this fact. The parties do not address how much the other Plaintiffs earn in tips per month, but, for purposes of their cross motions for summary judgment on this issue, the parties appear to assume that all Plaintiffs are "tipped employees" with respect to their on-the-road work.

wage for tipped employees is $2.13 per hour and the federal minimum wage is $7.25 per

hour, so the parties agree that the maximum tip credit an employer may take under the

FLSA is $5.12 per hour.  The parties also agree that Defendants paid Plaintiffs $4.25 per

hour—more than the minimum cash wage for tipped employees—for their on-the-road

work.  Defendants assert that they were entitled to pay a higher cash wage and still take the

maximum tip credit of $5.12, in order to offset any deductions for unreimbursed or under-

reimbursed expenses.  Defendants assert that if they are credited with the maximum tip

credit, at least 18 Plaintiffs, including named Plaintiff Perrin, would have no minimum wage

claim against Defendants because the tip credit would exceed any alleged under-

reimbursement of these Plaintiffs' vehicle expenses.  Plaintiffs assert that Defendants can

only claim a tip credit equal to the difference between their cash wage of $4.25 and the

minimum wage of $7.25.  Applying this limited tip credit, Plaintiffs assert that Defendants

have no offset against the alleged minimum wage violations.

Plaintiffs argue that even if Defendants could have taken the maximum tip credit to

offset any under-reimbursed expenses, they did not comply with the statutory and regulatory

prerequisites for doing so.  Plaintiffs contend that, as interpreted by the DOL, the FLSA

requires employers to notify employees in advance of the amount of the cash wage paid to

tipped employees and the amount of tip credit taken by the employer.  Plaintiffs argue that

this notice requirement is important because it informs employees of their regular rate of

pay, which is used to calculate overtime pay.   In other words, Plaintiffs argue, if Defendants

had notified employees that they were taking the maximum tip credit, Plaintiffs' regular rate

of pay for on-the-road work would have been much higher than minimum wage, and Defendants would have had to pay much more in overtime, which they did not.

Instead, Plaintiffs argue that Defendants consistently notified them, through letters and pay stubs, that Defendants were only taking a tip credit equal to the difference between the $4.25 cash wage and the applicable minimum wage, such that Plaintiffs' regular rate of pay was exactly minimum wage. Plaintiffs assert that Defendants' own Vice President of Human Resources, Robert Smith, who managed the tip credit transition, confirmed this fact when he testified that Defendants only intended to take a tip credit equal to the difference between the $4.25 cash wage and the applicable minimum wage, and further testified that Defendants never intended to use the tip credit to offset any under-reimbursed vehicle expenses. Plaintiffs argue that Defendants cannot now retroactively take a higher tip credit, without having provided Plaintiffs notice thereof, in order to cure their minimum wage violations. Finally, Plaintiffs assert that Defendants waived any reliance on the tip credit by failing to plead the tip credit as an affirmative defense and failing to identify the tip credit in answers to interrogatories asking for the factual bases of all defenses. Therefore, Plaintiffs argue that partial summary judgment should be entered precluding Defendants from taking a tip credit in an amount greater than the difference between Plaintiffs' cash wage and minimum wage.

Defendants argue that the FLSA, as interpreted by the DOL, permitted them to pay tipped employees a cash wage higher than $2.13—in this case, $4.25—and still take the maximum tip credit to offset any allegedly under-reimbursed expenses. Defendants admit that their letters notifying their delivery drivers of the tip credit, as well as their employee

handbook, state only that Defendants will "take a tip credit in the amount of the difference between [the driver's] hourly wage and the state minimum wage." (Doc. No. 405 at 15.) Defendants also admit that they never specifically "identif[ied] the amount of the tip credit as something greater than the difference between the direct cash wage and the general minimum wage" and that they "did not initially intend to take the maximum tip credit." (Doc. No. 404 at 8, 2.) Defendants state that they "had no reason" to take the maximum tip credit initially because they "believed then and still believe now that Plaintiffs have been paid at least the minimum wage." *Id.* at 2. However, Defendants argue that precluding them from taking the maximum tip credit because they did not specifically notify Plaintiffs in advance that they were doing so would "elevate form over substance." *Id.* at 3. Defendants contend that the FLSA only requires employers to notify employees of their intent to take a tip credit; it does not require employers to explain in detail how the tip credit works. *Id.* at 3. Therefore, Defendants argue that they complied with the letter and spirit of the FLSA by notifying drivers generally that they intended to meet their minimum wage obligations through the use of a tip credit.

Defendants also refute Plaintiffs' contention that Defendants cannot take the maximum tip credit because they did not calculate Plaintiffs' regular rate of pay for overtime purposes using the maximum tip credit. Defendants describe this argument as a "red herring" because Plaintiffs do not raise any overtime claims or identify any instances of overtime violations in this case. (Doc. No. 404 at 2 n.1.) Defendants argue that if the amount of tip credit needed to satisfy their minimum wage obligations is "greater than [they] anticipated"—because Plaintiffs now allege they were under-reimbursed for

expenses—Defendants should not be precluded from claiming the maximum tip credit permitted by the FLSA, as long as Plaintiffs received sufficient tips to cover that amount. *Id.* at 8. Finally, Defendants argue that the application of a tip credit need not have been pleaded as an affirmative defense because it is an attack on Plaintiffs' prima facie minimum wage claims, and that in any event, Defendants have pleaded and consistently relied on the defense that they paid all wages due to Plaintiffs under the FLSA and state law. Therefore, Defendants request that the maximum tip credit be applied and that partial summary judgment be entered in their favor on the minimum wage claims of the 18 Plaintiffs identified in Defendants' motion.

## Exclusion of Fixed Vehicle Costs

Defendants also move for summary judgment ordering that fixed vehicle costs—those which Defendants claim a driver would have incurred regardless of his or her employment—are not for the employer's benefit and therefore cannot be counted as "kick-backs" against an employee's wages. In support of their position, Defendants argue that they are aware of no drivers who purchased, registered, or insured a car specifically to work for them, and that these were costs that the drivers would have incurred regardless of their employment. Defendants stress that though they did reimburse drivers for a portion of these costs during the relevant time period, they were under no legal obligation to do so, and are not under one now.

Defendants analogize their drivers' fixed vehicle costs to the non-uniform clothing worn by restaurant employees. Defendants argue that although a restaurant may benefit from its employees wearing socks, for example, if it does not force its employees to buy any

particular socks and if the employees would likely have purchased socks regardless of their jobs, the metaphorical restaurant would not be liable to its employees for the cost of socks. Likewise, Defendants argue that they should not be liable to their drivers for fixed vehicle costs because the drivers routinely use their vehicles for non-work-related activities, and because Defendants require nothing other than that the car be insured and be clean, in good repair, and safe. For these reasons, Defendants claim that they cannot be held accountable for drivers' fixed vehicle costs as a matter of law, and that therefore, summary judgment on this issue is appropriate.

In response, Plaintiffs argue that Defendants have a duty to reimburse employees for their fixed costs, or at least for those which are incurred while they are making deliveries for Defendants, if those costs reduce employees' wages below the minimum wage. Plaintiffs note that this is industry practice, and that most delivery-oriented businesses, including Defendants themselves, reimburse their drivers a portion of their fixed costs. Moreover, Plaintiffs note that the DOL includes fixed costs in its calculation of vehicle expenses reimbursements when it enforces minimum wage compliance. Plaintiffs argue that the regulations at issue require an employee be reimbursed for "facilities" which "primarily" benefit the employer, which include "tools of the trade and other materials and services incidental to carrying on the employer's business," if the cost of those facilities cuts into the employee's minimum wages. *See* Doc. No. 389 at 4 (citing 29 C.F.R. § 531.3(d)). Plaintiffs state that in this context, fixed vehicle costs are "incidental" to Defendants' delivery business because without them, Defendants could not deliver pizzas, as Defendants lack a delivery fleet of their own.

Plaintiffs also argue that Defendants' non-uniform clothing analogy is inapposite, as socks and other non-uniform clothing are not incidental to the job of serving restaurant patrons, but a safe and licensed vehicle is incidental to pizza delivery service. Plaintiffs emphasize that their methodology, as did Defendants', only seeks reimbursement for a portion of the fixed costs a driver accrued while in the scope of his or her employment. Because the payment of these costs was a prerequisite for Plaintiffs' employment, and was necessary for the operation of Defendants' business, Plaintiffs argue, summary judgment is inappropriate.

**Matthiesen Declaration**

Finally, Plaintiffs move to strike the Declaration of Bradford K. Matthiesen submitted in support of Defendants' motions for summary judgment.[10] Matthiesen's declaration purports to identify certain Plaintiffs who would have no damages if certain assumptions about vehicle costs and mileage were applied. Plaintiffs argue that the declaration should be stricken, pursuant to Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1), because Defendants did not previously disclose Matthiesen as an expert witness.

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant

---

[10] Plaintiffs only move to strike Matthiesen's declaration submitted in support of Defendants' summary judgment motions. (Doc. No. 388.) The Court notes that Defendants also submitted an identical declaration by Matthiesen in support of their motion for leave to decertify the Rule 23 class action. *See* Doc. No. 366-16. However, Plaintiffs have not moved to strike this declaration.

'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts must view facts in the light most favorable to the non-moving party and resolve all doubts against the moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, will defeat a plaintiff's claim, and a defendant therefore bears the burden of proof with respect to its affirmative defenses. *PNC Bank, Nat. Ass'n v. El Tovar, Inc.*, No. 4:13–CV–1073 CAS, 2014 WL 538810, at *7-8 (E.D. Mo. Feb 11, 2014). As with any motion for summary judgment, a movant seeking summary judgment on an affirmative defense must first "inform[] the district court of the basis for its motion and identify[] those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex*, 477 U.S. at 323). There is no requirement that the movant support its motion with materials negating the affirmative defense. *See Celotex*, 477 U.S. at 323. Rather, the party with "the burden of proof on an issue . . . must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion." *Crotty v. Dakotacare Admin. Servs., Inc.*, 455 F.3d 828, 831 (8th Cir. 2006). Thus, if a defendant fails to make a showing sufficient to establish an

essential element of a defense on which it will bear the burden of proof at trial, Rule 56(c)

"mandates the entry of summary judgment" against it.  *See Celotex*, 477 U.S. at 322.

**Plaintiffs' Summary Judgment Motion Regarding Defendants' Reimbursement Rate**

The Court finds there to be material questions of fact that preclude summary

judgment on the issue of whether Defendants' reimbursement rate was a reasonable

approximation of Plaintiffs' vehicle expenses.  As noted above, the regulations applicable to

the FLSA allow employers to reasonably approximate the amount of an employee's

expenses incurred on his employer's behalf in lieu of tracking the employee's actual

expenses.  *See* 29 C.F.R. § 778.217.  However, neither the regulations nor the FLSA define

what constitutes a "reasonable approximation" in this context.  Plaintiffs contend that

Defendants' approximation was unreasonable as a matter of law because they failed to use

the IRS standard business mileage rate.  In support of this contention, Plaintiffs cite to the

DOL Handbook, which provides, in relevant part:

> **Car expenses – employee's use personal car on employer's business.**
>
> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine [minimum wage] compliance.  For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> (a) As an enforcement policy, the Internal Revenue Service (IRS) standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes.

DOL Handbook § 30c15(a) (issued June 30, 2000), *available at*

http://www.dol.gov/whd/FOH/FOH_Ch30.pdf; *see also Fast v. Applebee's Int'l, Inc.*, 638

F.3d 872, 878 (8th Cir. 2011) (finding that the DOL Handbook interpretations should be accorded deference when they interpret the DOL's own ambiguous regulations).

Plaintiffs also note that at least one court to consider the issue, *Zellagui v. MCD Pizza, Inc.*, No. 2:14-CV-01475-JHS, 2014 WL 5934113 (E.D. Pa. Nov. 13, 2014), found in the default judgment context that where a defendant pizza company failed to keep detailed records of its drivers' actual expenses, the IRS standard business mileage rate was a reasonable approximation of such expenses and should be used to determine the defendant's minimum wage compliance. Finally, Plaintiffs note that Defendants themselves used the IRS rate when reimbursing employees for non-delivery-related travel.

The Court has reviewed the non-binding authority cited by Plaintiffs and finds that, at most, they suggest that the IRS standard business mileage rate *may* be a reasonable approximation of employee vehicle expenses. These authorities do not suggest that the IRS rate is the *only* reasonable approximation of such expenses. Nor have Plaintiffs cited any authority holding that an employer's failure to use the IRS rate in approximating expenses is per se unreasonable. Indeed, Plaintiffs' own expert offers an alternative rate that Plaintiffs contend is a reasonable, albeit conservative, approximation of their expenses for minimum wage purposes. Therefore, the Court will deny Plaintiffs' motion for summary judgment on this issue and will leave to the jury the determination of whether Defendants' reimbursement rate reasonably approximated Plaintiffs' vehicle expenses.

## Plaintiffs' Summary Judgment Motion Regarding Defendants' Affirmative Defenses

As an initial matter, the Court rejects Defendants' argument that Plaintiffs' motion for partial summary judgment on certain affirmative defenses is premature. The most recent

Case Management Order set the deadline for dispositive motions as January 30, 2015, which is the exact date on which Plaintiffs filed their motion. (Doc. No. 354.) Moreover, this deadline was established based on a *joint* motion filed by the parties. (Doc. No. 353.) In short, Plaintiffs filed their motion at the proper time, and Defendants had every reason to anticipate that Plaintiffs would do so. If Defendants needed additional discovery to respond to Plaintiffs' motion, they could have filed a proper motion with the Court requesting an extension and identifying the responsive information they expected further discovery to reveal. Defendants chose not to do so, and the Court gives no weight to their post hoc protests about the schedule they helped to create.

The Court will address Defendants' relevant affirmative defenses in turn.

1. <u>Defendants' 20th, 22nd, 23rd, 24th, 29th, and 33rd Affirmative Defenses</u>

As stated above, a proper affirmative defense asserts new facts and legal arguments that, if proven, defeat or limit an otherwise legitimate claim for relief. *PNC Bank*, 2014 WL 538810, at *7. The Court finds that Defendants' 20th, 22nd, 23rd, 24th, 29th, and 33rd defenses are not proper affirmative defenses, in that they claim Plaintiffs have not met their burden of proof as to an element of their claims, or they assert defects in Plaintiffs' prima facie case. *See Liguria Foors, Inc. v. Griffith Labs., Inc.*, No. C14–3041–MWB, 2014 WL 6066050, at *3 (N.D. Iowa Nov. 13, 2014) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."); *Smith v. North Star Charter Sch., Inc.*, No. Civ. 1:10–618 WBS, 2011 WL 3205280, at *2 (D. Idaho July 26, 2011) (holding that purported defenses that "amount only to assertions that plaintiffs failed to state a claim" are not proper affirmative defenses).

These defenses assert, respectively, that Plaintiffs have not adequately pleaded the existence of diversity jurisdiction, that Defendants' have paid everything they were legally required to pay, that Defendants are not proper parties for the claims Plaintiffs assert, that certain Plaintiffs and class representatives lack standing, and that Defendants reserve the right to add additional affirmative defenses. Because these "negative defenses" are merely rebuttals against the evidence and claims presented by Plaintiffs, Defendants do not generally bear the burden of proof on them. *See Barnes v. AT&T Pension Ben. Plan— Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) (noting that defendants do not bear the burden of proof on such "negative defenses"); *see also F.T.C. v. Johnson*, No. 2:10–CV–02203–MMD–GWF, 2013 WL 4039069, at *4 (D. Nev. Aug. 5, 2013) (reservations of future affirmative defenses and blanket denials of liability are not affirmative defenses); *Perez v. Gordon & Wong Grp., P.C.*, No. 11–CV–03323–LHK, 2012 WL 1029425, at *11 (N.D. Cal. Mar. 26, 2012) (standing is not an affirmative defense); *Smith*, 2011 WL 3205280, at *2 (argument that "defendants . . . satisfied any duties owed" is not an affirmative defense).

Therefore, although Defendants have provided little or no evidence in support of these arguments, they are matters on which Plaintiffs bear the burden of proof at trial, and Plaintiffs cannot show that there is no material dispute with respect to these issues, which largely go to the merits of their claims.[11] Thus, the Court will deny Plaintiffs' motion for

---

[11] With respect to Defendants' "defense" that the Court lacks subject-matter jurisdiction, summary judgment is not proper because the Court may determine whether it lacks subject-matter jurisdiction at "any time." *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). However, the Court notes that Plaintiffs have adequately pleaded that this Court

partial summary judgment on these purported affirmative defenses, and allow the parties to argue these issues at trial. *See Smith*, 2011 WL 3205280, at *2 (striking certain affirmative defenses as improper, but noting that its order was "not intended to eliminate any of these issues from the case, nor to preclude defendant from arguing any of them as part of defendants' denial of liability").

    2.  <u>Defendants' 2nd Affirmative Defense</u>

Defendants' 2nd affirmative defense states that Plaintiffs' complaint is barred, in whole or in part, by an applicable statute of limitations. As they do with respect to all of their proper affirmative defenses, Defendants bear the burden of proof to produce facts showing that some or all of Plaintiffs' claims fall outside the applicable statute of limitations. *See Residential Funding Co. v. Terrace Mortgage Co.*, 850 F. Supp. 2d 961, 965 (D. Minn. 2012) ("Because the moving plaintiff need not disprove the non-movant's affirmative defenses, the defendant must *support* its affirmative defenses in the response to a plaintiff's motion for summary judgment.") (citation omitted); *LePage v. Blue Cross & Blue Shield of Minn.*, Civ. No. 08-584 (RHK/JSM), 2008 WL 2570815, at *3 (D. Minn. June 25, 2008) (noting that the "statute of limitations is an affirmative defense" to an FLSA claim). However, Defendants have not identified the applicable statute of limitations or put forth facts which support their defense. Indeed, Defendants' opposition brief does not respond to, or even mention, Plaintiffs' motion for summary judgment on the statute of limitations defense. Therefore, the Court will grant Plaintiffs' motion for partial summary judgment on

---

has federal-question jurisdiction over their FLSA claims under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367(a), and Defendants have not raised any facts or arguments that would cause the Court to question its jurisdiction.

Defendants' 2nd affirmative defense. *See Rikard v. U.S. Auto Prot., LLC*, No. 4:11CV1580 JCH, 2013 WL 5671342, at *3 (E.D. Mo. Oct. 17, 2013) (granting plaintiffs summary judgment on a statute of limitations defense where the defendants failed to oppose such); *Fed. Trade Comm'n v. North Am. Mktg. & Assocs.*, No. CV–12–0914–PHX–DGC, 2012 WL 5034967, at *3 (D. Ariz. Oct. 18, 2012) (striking affirmative defense of statute of limitations because the defendant did not identify the applicable statute of limitations).

3. Defendants' 5th Affirmative Defense

Defendants assert that Plaintiffs' claims are barred because Defendants relied in good faith upon, and acted in conformity with, interpretations of the FLSA promulgated by the DOL. This is a proper affirmative defense in FLSA cases, pursuant to § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259. On review, the Court finds that material questions of fact remain as to whether Defendants relied upon such written interpretations, and if they did, whether they acted in conformity with such DOL guidance. In large part, this debate is subsumed by the merits of Plaintiffs' case, which claims that the "reasonable approximations" of employee expenses Defendants utilized, as permitted by the DOL, were not in fact reasonable. Because a jury could find, depending on whether Defendants' reimbursement scheme itself is found to be reasonable and proper, that Defendants did or did not rely on, and conform to, the DOL's written interpretations of the FLSA, summary judgment on this defense is improper. The Court will therefore deny Plaintiffs' motion with respect to Defendants' 5th affirmative defense. *See Lewis v. Huntington Nat. Bank*, 838 F. Supp. 2d 703, 714 (S.D. Ohio 2012) (denying summary judgment on a § 10 affirmative defense in an FLSA case because material questions of fact remained as to whether the

employer relied upon a published Opinion Letter, and as to whether it conformed with it); *In re Cargill Meat Solutions Wage and Hour Litig.*, 632 F. Supp. 2d 368, 391 (M.D. Pa. 2008) (same).

### 4. Defendants' 16th Affirmative Defense

Defendants assert that Plaintiffs' state law claims are preempted by federal law. However, they fail to offer evidence for this assertion, and moreover, fail to respond to Plaintiffs' motion for summary judgment on this defense. The FLSA "does not generally preempt state law claims in a given case." *See Robertson v. LTS Mgmt. Servs. LLC*, 642 F. Supp. 2d 922, 928 (W.D. Mo. 2008) (citations omitted). As Defendants have failed to provide a factual basis for preemption in this case, the Court will grant Plaintiffs' motion for summary judgment as it relates to Defendants' 16th affirmative defense.

### 5. Defendants' 19th Affirmative Defense

Defendants' 19th affirmative defense states that putative class actions and FLSA collective actions are incompatible and cannot be maintained in the same action. The Court has previously denied Defendants' motion to dismiss based on this argument. (Doc. No. 127.) Defendants have not provided any additional factual or legal basis for the Court to reconsider its earlier decision, and in fact, Defendants do not respond at all to Plaintiffs' motion on this defense. Therefore, the Court will grant Plaintiffs' motion for summary judgment on Defendants' 19th affirmative defense.

### 6. Defendants' 25th Affirmative Defense

Defendants argue that Plaintiffs are not entitled to compensation for expenditures that Defendants were not actually or constructively aware of. While there is some case law

suggesting that employers are not liable for *overtime* worked by employees without their knowledge, the parties have not cited, and the Court has not found, any cases which expand this doctrine to employees' out-of-pocket expenditures allegedly made for the employer's benefit. *Cf. Koral v. Inflated Dough, Inc.*, Civ. No. 13-cv-02216-WYD-KMT, 2014 WL 4904400, at *2 (D. Colo. Sept. 29, 2014) (denying a defendant's motion to dismiss an FLSA case on the grounds that the defendant was unaware of its employees' out-of-pocket expenses, noting that the cases cited by the defendant in support only "address[ed] overtime" and were inapplicable to "instances where, as here, improper reimbursement is at issue"). Though Defendants have not yet shown that their knowledge of Plaintiffs' vehicle-related expenses is an essential element of Plaintiffs' claims, or that a lack of such knowledge may function as an affirmative defense to FLSA and state law wage claims, the Court cannot say as a matter of law, based on the record before it, that such a defense is not cognizable. Thus, the Court will deny Plaintiffs' motion for summary judgment, without prejudice to reassertion on an appropriate record, following the lifting of the stay.

7. Defendants' 26th, 28th, 30th, and 31st Affirmative Defenses

The Court will next address Defendants' equitable defenses of waiver, failure to mitigate, laches, and unclean hands. Defendants have cited authority for the proposition that at least some courts have found that the affirmative defense of unclean hands may be applicable to FLSA cases in limited circumstances. However, even the case cited by Defendants shows that this is the exception rather than the rule. In *Wlodynski v. Ryland Homes of Florida Realty Corp.*, the court explained that an employer defendant would have to show that the plaintiff committed wrongdoing which was directly related to his claim, and

- 29 -

that the defendant was personally injured by the employer's conduct. No. 8:08-CV-00361-JDW-MAP, 2008 WL 2783148, at *4 (M.D. Fla. July 17, 2008). In that case, the court struck the unclean hands defense because the defendant provided no facts showing that the plaintiff's alleged wrongdoing was directly related to his claim, or that the defendant was personally injured. *Id.* Similarly, Defendants have not explicitly stated what constitutes wrongdoing by Plaintiffs, how it is related to their claims in this case, and how Defendants were personally injured as a result. Defendants have thus not met their burden of proof with respect to this affirmative defense, and summary judgment in favor of Plaintiffs is warranted. *See Torres v. Gristede's Op. Corp.*, 628 F. Supp. 2d 447, 464-65 (S.D.N.Y. 2008) (granting the plaintiffs' motion for summary judgment on the affirmative defense of unclean hands because there was no evidence that the plaintiffs engaged in any misconduct).

With respect to Defendants' laches argument, the Court agrees with Plaintiffs that this defense is inapplicable to Plaintiffs' FLSA and state minimum wage claims. Laches only serves to bar an equitable claim when the plaintiff is guilty of unreasonable and inexcusable delay that prejudiced the defendant. *See Torres*, 628 F. Supp. 2d at 464. Here, Plaintiffs' wage and hour claims are rooted in statutory law, and Defendants, as discussed above, do not seriously dispute that the claims were raised within the statutory period. Thus, the Court will grant Plaintiff summary judgment on the defense of laches. *See id.* (granting the plaintiffs' motion for summary judgment on the affirmative defense of laches because the doctrine was "inapposite" to the plaintiffs' wage and hour claims).

The Court also agrees with Plaintiffs that there is no duty to mitigate damages under the FLSA or state wage laws. While Defendants maintain that failure to mitigate is still a

proper affirmative defense in this case, they fail to cite any law in support of this argument, and the Court has not found any law suggesting that Plaintiffs had a duty to mitigate damages. The Court agrees with Plaintiffs that failure to mitigate does not apply in this case, and will grant Plaintiffs' motion for summary judgment on this defense. *See Tran v. Thai*, Civ. No. H–08–3650, 2010 WL 5232944, at *7 (S.D. Tex. Dec. 16, 2010) (granting summary judgment on a failure to mitigate affirmative defense because there is no duty to mitigate overtime wages under the FLSA, and such a duty would contradict the central purpose of the FLSA) (collecting cases); *Lopez v. Autoserve, LLC*, No. 05 C 3554, 2005 WL 3116053, at *2 (N.D. Ill. Nov. 17, 2005) (striking a failure to mitigate affirmative defense because there was no duty to mitigate under the FLSA or state wage laws).

Finally, Defendants claim that Plaintiffs are estopped from, or have waived, their claims due to their failure to record and report their actual expenses. On review, the Court agrees with Plaintiffs that a defense of estoppel is generally not applicable to FLSA claims, as it is inconsistent with both the language and policy of the FLSA. *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959). In the overtime context, this is true "even where an employee is required, but fails to, record overtime hours worked." *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1321 (S.D. Fla. 2005) (citing *Burry v. Nat'l Trailer Convoy, Inc.*, 338 F.2d 422, 426-27 (6th Cir. 1964); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir. 1951)). Likewise, waiver is usually not a recognized defense under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("[W]e have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the

legislative policies it was designed to effectuate.") (citation omitted). Defendants have not demonstrated that any exceptions apply that would make estoppel or waiver a cognizable defense in this case. Moreover, even if the Court were to assume that these doctrines apply, Defendants have not raised a triable issue of fact. The only argument that Defendants offer is that Plaintiffs failed to report their actual expenses. However, there is no evidence of a policy which required them to do so, and Defendants have admitted that they did not track employees' actual expenses anyway. Thus, the Court will grant summary judgment with respect to Defendants' waiver/estoppel affirmative defense.

8. <u>Defendants' 27th Affirmative Defense</u>

Defendants also allege that, "[t]o the extent Plaintiff, and others with whom he is 'similarly situated,' are entitled to damages, Defendants are entitled to a credit for, or set off against, amounts overpaid to them." (Doc. No. 137 at 39.) Defendants have not explained what this defense means or offered authority in support of it. Instead, Defendants generally argue that summary disposition of this defense is improper as it relates to the measure of damages and cannot be decided until liability has been determined. In their reply brief, Plaintiffs construe Defendants' defense as an attempt to use weeks in which drivers' average hourly pay exceeded minimum wage to offset those weeks in which the average wage fell below minimum wage. Plaintiffs cite several cases which appear to dispel the notion that Defendants' set-off argument is a proper affirmative defense, to the extent that it seeks to average drivers' wages across multiple workweeks. *See, e.g.*, *Reich v. Giaimo*, Civ. A. No. 85-2184(C)(5), 1993 WL 724662, at *8 (E.D. Mo. Dec. 30, 1993) ("Payments in excess of the minimum wage in one workweek cannot be credited towards deficiencies which exist in

another workweek."); *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985) ("[T]he rate per hour should be determined by treating each work week as a separate unit of time.") (citation omitted). The Court agrees with Plaintiffs that Defendants are not permitted to use weeks in which a driver's average hourly pay was above the applicable minimum wage as a set-off against weeks in which that driver's average hourly pay was below minimum wage. However, as Defendants have not made clear that this is the argument being asserted in their 27th affirmative defense, the Court does not find it proper to grant summary judgment at this time. Thus, the Court will deny Plaintiffs' motion for summary judgment with respect to this affirmative defense, without prejudice to reassertion on an appropriate record, following the lifting of the stay in this case.

9. <u>Defendants' 32nd Affirmative Defense</u>

The final affirmative defense at issue in Plaintiffs' motion alleges that Plaintiffs have not complied with all administrative requirements before filing this action. The parties have not cited, and the Court has not found, any analogous cases addressing this argument in the context of the FLSA. Indeed, neither party has provided any factual or legal support whatsoever for their respective positions. Rather, Plaintiffs argue that Defendants have not produced any evidence supporting their defense, and Defendants argue that Plaintiffs have not met their burden of proof to support their prima facie case. However, to the extent that Defendants are alleging that Plaintiffs failed to exhaust a necessary administrative remedy, they must identify the remedy in question. Because Defendants have failed to make such a showing, the Court will grant summary judgment as to this affirmative defense.

**Cross Motions for Summary Judgment Regarding Application of the Tip Credit**

The Court finds, as a matter of law, that Defendants may not claim a tip credit in an amount greater than the difference between Plaintiffs' cash wage and minimum wage because they failed to notify Plaintiffs in advance that they were doing so. Therefore, the Court will grant Plaintiffs' motion for summary judgment on this issue and deny Defendants' motion for summary judgment.

Under the FLSA, the wage paid to a tipped employee[12] is defined as the sum of (1) the cash wage paid to the employee, which must be at least the minimum cash wage that was required to be paid to tipped employees on August 20, 1996 ($2.13 per hour), and (2) an additional amount based on the tips received by the employee that is equal to the difference between the cash wage and the current rate required by 29 U.S.C. § 206(a)(1) ($7.25 per hour). *See* 29 U.S.C. § 203(m); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011). "The amount required by paragraph (2) is commonly referred to as the 'tip credit' because it allows the employer to avoid a larger cash payment to the employee as long as the employee's tips make up the difference between $2.13 per hour and the current minimum wage." *Fast*, 638 F.3d at 876.

However, the tip credit comes with conditions. The FLSA provides that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m). "This notice

---

[12]    A "tipped employee" is an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Perez v. Lorraine Enterprises, Inc*., 769 F.3d 23, 27 (1st Cir. 2014). The DOL has promulgated regulations to implement the tip credit, and the parties rely on these regulations in their respective motions. *See* 29 C.F.R. §§ 531.50-531.60. The DOL's regulations state that, pursuant to 29 U.S.C. § 203(m), employers are not eligible to take a tip credit unless they have informed employees in advance of "[t]he amount of the cash wage that is to be paid to the tipped employee by the employer [and] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer . . . ." 29 C.F.R. § 531.59(b); *but see Garcia v. Koning Restaurants Int'l, L.C*., No. 12-CV-23629, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013) (finding that "[a]n employer does not have to give its employees a rigorous explanation of how the tip credit works; rather, it is enough to inform them of it").

It is undisputed that Defendants never notified Plaintiffs they were taking a tip credit greater than the difference between Plaintiffs' cash wage and the applicable minimum wage. Although Defendants attempt to downplay the notice requirement, the Court agrees with Plaintiffs that the notice provision is more than just a technical requirement. As discussed below, the tip credit notice informs employees of their regular rate of pay and of the higher rate to which they are entitled for overtime.

As an initial matter, the FLSA does not directly discuss whether an employer may pay a higher cash wage to tipped employees and still take the maximum tip credit to offset any unreimbursed expenses. However, in support of their contention that the FLSA permits

them to do this, Defendants rely primarily on two guidance documents issued by the DOL.

The first is a 2006 Opinion Letter, in which the DOL offered the following guidance

regarding using a tip credit to offset an employee's unreimbursed uniform laundering

expenses:

> [A]n employer may not pay tipped employees *less than* $2.13 an hour in direct
> wages. The employer may, however, pay tipped employees more than the
> minimum required cash wage . . . . For example, if an employer chooses to
> pay $3.13 per hour in direct wages and claims the full tip credit, that server's
> regular rate would be [$8.25][13] per hour, and this is the rate on which
> additional half-time pay would be computed if the server worked more than 40
> hours in a workweek. In this example, the employer could deduct each week
> toward uniform maintenance up to $1.00 per hour for each hour the server
> worked that week.

Opinion Letter FLSA2006-21, Dep't of Labor, Wage & Hour Div., Op. Letter, 2006 WL

1910966, at *3 (June 9, 2006).

This opinion letter cites the DOL Handbook § 30d08, which is the second guidance

document on which Defendants rely. The DOL Handbook § 30d08 suggests that employers

may pay more than the minimum cash wage for tipped employees and still take the

maximum tip credit to offset deductions for expenses that would otherwise cut into

minimum wage:

> [W]here the employer pays [$4.13] per hour in cash wages and claims [the
> maximum] tip credit of [$5.12] per hour and the employees receive not less
> than [$5.12] per hour in tips, the employees' [regular rate] is [$9.25]. In such
> cases, deductions of up to [$2.00] per hour ([$9.25 - $7.25]) may be made for
> such things as uniform purchases and maintenance without cutting into the

---

[13]     As the parties have done in their briefs, the Court has adjusted the wage rates cited in
the DOL's guidance documents to reflect the current federal minimum wage of $7.25. *See*
Doc. No. 372 at 8 n.7.

required [minimum wage]. (The employees would still be due [$13.88] per hour for each [overtime] hour worked ([$9.25] x 1 ½)).

DOL Handbook § 30d08(b).

Although these guidance documents suggest that employers may pay a higher cash wage and still claim the maximum tip credit to offset expenses, they recognize that to do so, employers must comply with the DOL's regulations regarding employees' regular rate of pay for overtime purposes. The DOL's regulations provide that, for overtime purposes, "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer per hour." 29 C.F.R. § 531.60. Indeed, in the section of the DOL Handbook directly preceding the section cited by Defendants, the DOL advises that "[a]n employer may not take a different tip credit during [overtime] hours than is taken during non-OT hours" because "[t]o so allow would conflict with the purposes of the OT provisions of the FLSA." DOL Handbook § 30d07(a). Thus, "[w]here an employer pays a cash wage to a tipped employee in excess of the amount required by Sec 3(m) and also wishes to claim the full tip credit amount, the employee's regular rate of pay for OT purposes is the sum of the cash wage paid and the tip credit amount claimed." *Id.* § 30d07(c).

Although the Plaintiffs do not raise overtime claims in this litigation, the Court agrees with Plaintiffs that the relationship among the FLSA's tip credit, minimum wage, and overtime provisions highlights the importance of the FLSA's tip credit notice requirements. By limiting their tip credit to the difference between Plaintiffs' cash wage and the applicable minimum wage, and so notifying Plaintiffs, Defendants were permitted to similarly limit Plaintiffs' regular rate of pay for overtime purposes to minimum wage. Had Defendants taken a higher tip credit to offset against potential unreimbursed expenses, as they claim the

DOL guidance documents allow, this would have increased Plaintiffs' regular rate of pay and, correspondingly, increased the amount Defendants owed Plaintiffs for overtime. Nothing in the DOL guidance documents, regulations, or the FLSA permits Defendants to claim a higher tip credit retroactively, in order to gain the benefit of an offset, without having notified Plaintiffs of the higher tip credit (and the correspondingly higher rate of pay for overtime purposes). Because it is undisputed that Defendants did not notify Plaintiffs in advance that they were taking the maximum tip credit, the Court finds that Defendants are prohibited from taking the maximum tip credit as a matter of law. Therefore, the Court will deny Defendants' motion for summary judgment on this issue and will grant Plaintiffs' motion for partial summary judgment precluding Defendants from relying, post hoc, on a tip credit greater than the difference between Plaintiffs' cash wage and the applicable minimum wage.

**Defendants' Summary Judgment Motion Regarding Exclusion of Fixed Costs**

The Court finds there to be material questions of fact which preclude summary judgment regarding the exclusion of fixed costs from the calculation of Defendants' minimum wage liability. At its core, the parties' argument regarding this issue is over whether drivers' fixed vehicle costs qualify as facilities primarily benefitting—or incidental to—Defendants' business, such that they must be included in determining Defendants' minimum wage compliance. Construing the facts in the manner most favorable to Plaintiffs, the Court declines Defendants' invitation to assume that each Plaintiff would have purchased, registered, and maintained their vehicles, on their own, in the same fashion that they were required to under the terms of their employment. As an example, if not for their

position, some Plaintiffs might have foregone the use of a car altogether, carpooling or utilizing public transportation instead of insuring and maintaining a personal vehicle. Thus, a reasonable jury could find that such fixed costs arose out of drivers' employment, for the benefit of Defendant.

Moreover, there is substantial overlap between the parties' argument over fixed costs, and their argument over the reasonableness of Defendants' overall reimbursement methodology, of which the "fixed cost" calculation is but a part. The question of fixed costs is thus subsumed by the parties' debate over the reasonableness of Defendants' reimbursement formula, as to which, as discussed above, there remain additional factual questions better left to a jury. In short, Defendants have not met their burden of showing that there is an absence of issues of material fact such that summary judgment would be warranted.

As this is primarily a factual question, the Court need not delve into a determination of whether, and to what extent, Defendants benefit from their drivers' fixed vehicle expenditures. However, a brief survey of regulatory guidance and industry practice reveals a general acceptance that at least a portion of such fixed costs are for the benefit of the employer, and are thus properly reimbursable expenses under the FLSA. Plaintiffs assert that most companies with delivery-based business, including Defendants, reimburse their drivers for a portion of their fixed vehicle expenses. This makes logical sense, as courts have decided that, for the purposes of determining minimum wage compliance, expenses incurred for the benefit of the employer include costs that are "essential for the . . . employment relationship to come to fruition." *See Rivera v. Peri & Sons Farms, Inc.*, 735

F.3d 892, 898 (9th Cir. 2013).  Applied to this case, having a safe, clean, and legal vehicle is as necessary for Plaintiffs to be employed as drivers, as it is for Defendants to maintain a delivery operation without its own fleet of vehicles.  Indeed, as discussed above, the DOL advises that, in order to comply with minimum wage laws, businesses may reimburse employee vehicle costs using the IRS standard business mileage rate, which includes amounts for "depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees."  DOL Handbook § 30c15.  Such compensation, the Handbook suggests, will often be appropriate "for delivery drivers employed by pizza . . . restaurants."  *Id.*  Thus, at a minimum, Plaintiffs have raised a factual question that some portion of fixed costs may be considered in determining Defendants' minimum wage compliance.

**Plaintiffs' Motion to Strike the Matthiesen Declaration**

The Court did not rely on Matthiesen's declaration in denying Defendants' motions for summary judgment.  Therefore, Plaintiffs' motion to strike this declaration is moot.

**CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment regarding Defendants' reliance on tips to achieve the minimum wage is **GRANTED**.  (Doc. No. 367.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment on Defendants' affirmative defenses is **GRANTED in part**, with respect to defenses numbered 2, 16, 19, 26, 28, and 30-32, and **DENIED in part**, with respect to defenses numbered 5, 20,

22-25, 27, 29, and 33.  (Doc. No. 360.)  With respect to defenses numbered 25 and 27, the motion for summary judgment is **DENIED without prejudice** to reassertion at a later stage and upon an appropriate record.

      **IT IS FURTHER ORDERED** that the following motions for summary judgment are **DENIED**:  Plaintiffs' motion for summary judgment regarding Defendants' failure to use reasonable reimbursement rates (Doc. No. 364); Defendants' motion for summary judgment regarding application of the tip credit (Doc. No. 371); and Defendants' motion for summary judgment regarding exclusion of fixed costs (Doc. No. 368).

      **IT IS FURTHER ORDERED** that Plaintiffs' motion to strike the declaration of Bradford K. Matthiesen is **DENIED as moot**.  (Doc. No. 388.)

_Audrey G. Fleissig_
_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2015.